**Dean OWENS, Appellant,**

v.

**John BROWNLIE and Donna Brownlie, Appellees.**

No. 98–1133.

Supreme Court of Iowa.

April 26, 2000.

Rehearing Denied May 31, 2000.*

* NEUMAN, J., taking no part.

Morris L. Eckhart of Milroy, Eckhart and Thompson, Vinton, for appellant.

Ross Hauser of Shea Law Offices, Cedar Rapids, and Keith Mossman of Mossman and Mossman, L.L.P., Vinton, for appellees.

CADY, Justice.

This is an appeal from an order by the district court dismissing an action for declaratory judgment and injunctive relief filed in response to the condemnation of land. We affirm.

## I. Background Facts and Proceedings.

Dean Owens is the brother of Donna Brownlie. Their family has owned a 200–acre farm in Benton County since 1928. It was originally owned by Dean and Donna's grandparents, and later by their parents. After the death of their father in 1967, the land continued to be owned by their mother and was farmed by John Brownlie. John is Donna's husband.

The land passed to Dean and Donna in 1995 following the death of their mother. Dean inherited the southern 100 acres while Donna inherited the northern 100 acres.

The 200–acre tract was bordered on the east by the Benton–Linn Road. A public road also bordered the property to the south. Farm land owned by third parties bordered the property to the west and the north. A creek, known as Dry Creek, runs diagonally across the tract from the northeast corner of the land to the western half of the southern border. Most of the northern tract inherited by Donna lies west of Dry Creek.

Contrary to its name, water runs through Dry Creek at various levels depending upon the time of the year and the amount of rainfall. The creek is generally seven to nine feet wide with water at a minimum level of three inches in the fall of the year. The water level is around eighteen inches in springtime. For the most part, the creek has steep banks. After a heavy rain, the creek can rise to levels in excess of five feet and spill over the banks. The creek normally rises over its banks several times each year.

Over the years, the Owens family gained access with their farm equipment to the land west of Dry Creek by three methods. One method was to enter from the public road running along the southern border. Another means was to cross over the

neighbor's land to the north. The third method was to cross through a shallow area of the creek in the northern portion of the land where the banks of the creek slope.

Over time, the access point through the creek was discontinued. It was last used in 1967. A grove of trees subsequently grew in the area and the creek has started to produce steeper banks. Additionally, the crossing over the neighbor's land to the north was lost years ago. This land had been owned by Dean and Donna's uncle, who permitted the crossing. The land is now owned by a third person.

After the land was divided into north and south tracts, the Brownlies believe they did not have ingress or egress to their land west of Dry Creek. They instituted a condemnation proceeding seeking to acquire a public way over Owens' land for the purpose of ingress and egress. They alleged in their condemnation application that their property was land locked, and sought to condemn a 100–yard path along the western border of Owens' land to the public road running along the southern border of the land.

The Brownlies presented their application for condemnation to the chief judge of the sixth judicial district. This is the judicial district in which the property is located. The judge appointed a condemnation commission to assess the value of the strip of land sought to be condemned. Owens was notified of the time and date in which the commission would view his land to assess the damages.

The land was appraised by the commission at $2740. Owens subsequently filed a petition seeking a declaratory judgment that the Brownlies were not authorized to condemn the land. Owens also sought permanent and temporary injunctive relief. He claimed the Brownlies had reasonable access to the land west of Dry Creek by simply crossing through the creek. Prior to trial, Owens amended his petition to include allegations of fraud and illegality based upon deficiencies in the application for condemnation. He also claimed he was denied due process because of the lack of notice prior to the appointment of the condemnation commission.

Owens acknowledged at trial that the area of the creek formerly used as a crossing could not presently accommodate farm equipment. However, he believed the old creek crossing could be restored by removing the trees, grading the banks, and installing a rock or gravel bed. Owens indicated his father was able to transport all of his farm equipment over the area when it was used as a crossing prior to 1967. Owens also believed the Brownlies could install a large culvert or construct a bridge over the creek, but offered no evidence of the cost of such a project.

John Brownlie farmed the 200–acre tract for nearly thirty years prior to the time it was divided into north and south sections. He testified at trial that the creek has changed since the Owens family used it as a crossing. It now handles a greater volume of water due to increased tiling which runs into the creek from farms upstream. The creek bottom contains deep silt and loose sand, and the ground around the banks is frequently wet and swampy.

Brownlie also testified farming practices and machinery have changed dramatically since the Owens family used the creek as a crossing. The machinery is much bigger and heavier. Brownlie believed his planter in particular would be damaged by driving it through the creek, and grain trucks would be unable to traverse any crossing.

Brownlie further opined that the force of the water at certain times of the year would wash out a rock bed, and the depth of the water level at various times of the year would require an elaborate bridge or culvert system. He believed the cost of a bridge or culvert crossing would be more than the value of the land.

The district court denied the request for injunctive relief and found the Brownlies

did not have reasonable access to their land west of Dry Creek and were entitled to condemn Owens' land to gain a public way. Owens appeals.

## II. Scope of Review.

■ We review declaratory judgment actions according to the manner the case was tried in the district court. *Smith v. Bertram*, 603 N.W.2d 568, 570 (Iowa 1999). If tried in equity, as in this case, our review is de novo. Iowa R.App. P. 4; *Western States Ins. Co. v. Continental Ins. Co.*, 602 N.W.2d 360, 362 (Iowa 1999). Our review of actions for injunctive relief is also de novo. *See In re Luloff*, 569 N.W.2d 118, 122 (Iowa 1997). Thus, we give weight to the findings of fact made by the trial court in this case, especially with respect to the credibility of witnesses, but are not bound by those findings. *See id.*

## III. Eminent Domain.

■ Eminent domain is the power of a government to take private property for public use conditioned upon the payment of just compensation. *Hinrichs v. Iowa State Highway Comm'n*, 260 Iowa 1115, 1126, 152 N.W.2d 248, 255 (1967). It is recognized to be an inherent aspect of government, exercised through entities or individuals authorized by statute. *Hardy v. Grant Township Trustees*, 357 N.W.2d 623, 625 (Iowa 1984); *see also Reter v. Davenport Ry.*, 243 Iowa 1112, 1118, 54 N.W.2d 863, 867 (1952). Common recipients of the power of eminent domain include counties, cities, public service entities, as well as the state. *See* Iowa Code §§ 6A.1, .4, .6. The power to condemn land in Iowa is also conferred upon those who own or lease land which has no public or private access. *Id.* § 6A.4(2). Thus, an owner of "land locked" property is permitted to institute condemnation proceedings to secure a public way over other land to permanently solve the inability to access

the property. *In re Luloff*, 512 N.W.2d 267, 274 (Iowa 1994) (hereinafter *"Luloff I "*).

■ An eminent domain action is recognized as a special proceeding. *Richardson v. City of Centerville*, 137 Iowa 253, 256, 114 N.W. 1071, 1072 (1908). It is a unique blend of administrative and legal procedures which are prescribed by statute. *See* Iowa Code ch. 6B; *see also State v. Johann*, 207 N.W.2d 21, 23 (Iowa 1973). Unlike a traditional adversary proceeding, an eminent domain action is initiated by the condemner without notice to the condemnee by claiming to be an entity authorized by the legislature to condemn land.[1] The only judicial action which occurs before the condemnation commission is assembled to assess the compensation for the taking is a determination by the chief judge of the judicial district in which the land is located that the application is legally sufficient and the applicant is empowered to condemn the land. *Johann*, 207 N.W.2d at 24. Following this threshold determination, a condemnation commission is selected to appraise the damages as a result of the taking. *See* Iowa Code § 6B.4. The condemnee is then given notice of the time the commission will view the land to assess the damages. *Id.* § 6B.8; *see Thornberry v. State Bd. of Regents*, 186 N.W.2d 154, 156 (Iowa 1971).

■ Once the award is made by the condemnation commission, either the condemner or condemnee may appeal the assessment to the district court. Iowa Code § 6B.18; *Burnham v. City of West Des Moines*, 568 N.W.2d 808, 810 (Iowa 1997). The general focus of the appeal, however, concerns the amount of damages. *See State ex rel. Iowa State Highway Comm'n v. Read*, 228 N.W.2d 199, 203 (Iowa 1975). Additionally, a condemnee may challenge the initiating action of the condemner by injunction, mandamus, and certiorari. *Thompson v. City of Osage*, 421 N.W.2d

---

1. The recent amendments to chapter 6B, not applicable to this case, now provide for notice and good faith negotiations for the purchase of the land before filing an application for condemnation. *See* 1999 Iowa Acts ch. 171, §§ 3, 4.

529, 531 (Iowa 1988). These remedies give the condemnee a procedural vehicle to promptly challenge the propriety of the condemnation, including the issue whether the property sought to be condemned is necessary for public use. *Id.* at 532. Although our legislature primarily decides those activities that constitute public use, courts decide whether the underlying facts show an activity that constitutes a public use. 27 Am.Jur.2d *Eminent Domain* § 555, at 112–13 (1996). Thus, our legislature has declared the taking of land for access to land locked property to be a public use under section 6A.4(2). Yet, the right of an owner of land locked property to proceed under the statute depends upon "the existence of facts upon which the right rests." *Strawberry Point Dist. Fair Soc'y v. Ball,* 189 Iowa 605, 609, 177 N.W. 697, 698 (1920). An owner who seeks to exercise the right of condemnation must in fact have no public or private way from the land to a street or highway. *Luloff I,* 512 N.W.2d at 271.

### IV. Challenge to Authority to Condemn as Owner of Land Locked Property.

Owens initially claims the Brownlies had no underlying right to condemn his land because their property was not land locked. His claim is based on two arguments. First, he asserts land cannot be land locked under section 6A.4(2) as long as a portion of the overall tract of the land is accessible from a public road. Second, he argues the Brownlies have reasonable access to their land west of Dry Creek.

### A. Burden of Proof.

Before addressing the factual basis for condemnation, we must consider the procedural posture in which the challenge is made. Owens requested declaratory and injunctive relief in response to the condemnation of his land. The burden of proof in a declaratory judgment action is the same as in an ordinary action at law or equity. *North Liberty Land Co. v.*

*Incorporated City of North Liberty,* 311 N.W.2d 101, 103 (Iowa 1981). The plaintiff bringing the action has the burden of proof, even if a negative declaration is sought. *Id.; see Myers v. Caple,* 258 N.W.2d 301, 305 (Iowa 1977) (party seeking injunction has burden of proof). Moreover, we have previously determined that the burden of proof in an action to challenge the authority of the condemning entity to condemn land rests with the landowner whose land is sought to be condemned. *Hardy,* 357 N.W.2d at 627; *Mann v. City of Marshalltown,* 265 N.W.2d 307, 314 (Iowa 1978). Thus, we conclude Owens had the burden of proof by a preponderance of the evidence to show the Brownlies were not authorized under the statute to condemn land as a public way because their property was not land locked.

### B. Land Locked Property.

The language of section 6A.4(2) authorizes condemnation when a landowner has "no public or private way to the lands." Iowa Code § 6A.4(2). The statute does not expressly define whether condemnation is authorized when only a portion of the land is claimed to be without "public or private way." However, we recognize the goal of the statute authorizing condemnation by an owner of land locked property is to solve the problem of access to the property. *Luloff I,* 512 N.W.2d at 274. It is socially desirable to make land locked property useable by providing a means of ingress and egress. *Id.* at 273 (providing a public way to land locked property is for the general good of the public). This purpose is implicated when part of a tract of land is inaccessible just as when all of the land is inaccessible.

A natural obstruction can be so obtrusive that it essentially creates two separate tracts of land. *See Anderson v. Lee,* 191 Iowa 248, 251, 182 N.W. 380, 381 (1921) (stream and large ditch subject to overflow, coupled with stony hills claimed impassable); *see also McGowin Inv. Co. v.*

*Johnstone,* 54 Ala.App. 194, 306 So.2d 286, 288 (Civ.App.1974) (physical make-up of land—swamps, ravines, and creeks—coupled with the prohibitive cost of improving denied reasonable access to land); *Miller v. Schmitz,* 80 Ill.App.3d 911, 36 Ill.Dec. 68, 400 N.E.2d 488, 490–91 (1980) (easement by implication granted across neighbor's land where bridging the creek which bisected the land constituted substantial expenditure in light of inexpensive easement across defendant's land); *Wiese v. Thien,* 279 Mo. 524, 214 S.W. 853, 855 (1919) (impassability of river which divided land resulted in two separate parcels of land); *Beeson v. Phillips,* 41 Wash.App. 183, 702 P.2d 1244, 1247 (1985) (access to one portion of condemner's property does not preclude obtaining vehicular access to other parts of property not reasonably available without encroaching upon neighbors' property); *see* Michael A. DiSabatino, *Way of Necessity Where Only Part of Land is Inaccessible,* 10 A.L.R.4th 500 (1981). We believe the language and purpose of our condemnation statute reveal a landowner is authorized to condemn land when any portion of the entire tract of land has no public or private way. We reject Owens' claim that the Brownlies' land west of Dry Creek cannot be considered land locked because there is public access to their land east of Dry Creek.

### C.  Reasonable Necessity.

A landowner is only authorized to condemn an access way to a public road or private land under section 6A.4(2) if there is no existing private or public access to the land. *Luloff I,* 512 N.W.2d at 271. The parties agree there is no public access in this case to the land west of Dry Creek. The dispute is whether the Brownlies have private access through their own land. The Brownlies claim the creek prevents reasonable private access to the land west of the creek. Owens claims that the Brownlies can acquire access through the creek by making some minor modifications to the area.

We have never squarely addressed the issue of when a natural obstruction over private land makes a portion of the land inaccessible for the purposes of condemnation. Other jurisdictions offer a host of views. *See Ex parte Cater,* —— So.2d ——, ——, 2000 WL 264227 (Ala.2000) (condemnation not allowed where no evidence showing disproportionate nature of building bridge or repairing previous private roadway); *Riggs v. Bert,* 245 Ark. 515, 432 S.W.2d 852, 853 (1968) (building bridge or bulldozing and filling the intervening creek were options precluding condemnation of neighbor's land); *Thompson v. Whinnery,* 895 P.2d 537, 541–42 (Colo. 1995) (easement by necessity declined where land was accessible by foot or horseback); *McCluggage v. Loomis,* 176 Kan. 318, 270 P.2d 248, 253 (1954) ("statute makes no provision for laying out a road over the land of another ... [where land] is separated ... by a stream, gulch, deep ravine or any other natural depression or obstruction...."); *Hollars v. Church of God,* 596 S.W.2d 73, 75 (Mo.Ct.App.1980) ("hollow" which bisected land did not create two separate parcels, land was one tract with access to public highway thus precluding condemnation); *State ex rel. Carlson v. Superior Court,* 107 Wash. 228, 181 P. 689, 691 (1919) ("A man having a present right of way may find a more convenient way over the land of another, but he may not take it under a claim that it is necessary to the proper use and enjoyment of his land or to save expense, unless there is no other passable way or expense would be prohibitive.").

Owens argues a landowner should have no right to condemn under section 6B.4(2) if the owner is able to get to property however inconvenient or costly the access may be. This absolute necessity standard has been followed in some jurisdictions. *See* 26 Am.Jur.2d *Eminent Domain* § 75, at 512–13 (1996). Other jurisdictions, however, follow a less stringent standard of reasonable necessity, and permit condemnation if providing private access between

two tracts would be extremely inconvenient or impractical, or cost-prohibitive. *Id.*

■ We have previously recognized that an existing right of access to defeat the right of condemnation for an access route must be reasonably adequate for the intended purpose. *Luloff I*, 512 N.W.2d at 271; *Anderson*, 191 Iowa at 251, 182 N.W. at 382. Thus, we reject the absolute necessity standard urged by Owens. However, we also recognize that the ability to change the condition of land to provide for access is considered. *See Anderson*, 191 Iowa at 251, 182 N.W. at 382. Thus, while we follow a reasonableness standard, there are actually two areas of inquiry. As stated by the Supreme Court of Alabama:

> "If one has a way through his own land, he cannot impose a 'way of necessity' through his neighbor's land, unless his own way is not reasonably adequate or its cost is prohibitive. Mere inconvenience or mere cost, as the basis for using another's land to get access to one's own property, falls short of meeting this test."

*Cater*, ── So.2d at ──, 2000 WL 264227 (citations omitted) (quoting *Oyler v. Gilliland*, 382 So.2d 517, 519 (Ala.1980)).

■ The first inquiry is whether the land in its existing state provides reasonable access. Mere inconvenience does not establish lack of reasonable access. Instead, this standard considers the nature of the obstruction and all other surrounding circumstances, including the intended use of the land and the intended purpose for access. *See Luloff I*, 512 N.W.2d at 271; *Anderson*, 191 Iowa at 251, 182 N.W. at 382 (width of path inadequate to accommodate farm machinery). It may also be appropriate in some cases to consider the value of the land sought to be condemned against the value of the land benefited by the condemnation. *See MacCaskill v. Ebbert*, 112 Idaho 1115, 739 P.2d 414, 419 (App.1987); *Jackson v. Nash*, 109 Nev. 1202, 866 P.2d 262, 269 (1993).

■ If reasonable access does not exist, the next inquiry is whether the land can be changed by the owner to provide reasonable access. *See Anderson*, 191 Iowa at 251, 182 N.W. at 382 (reasonable improvements impractical in light of natural character of land). Many jurisdictions who follow the reasonable necessity standard consider the cost of the improvements and apply a test of proportionality to answer this inquiry. *See* Michael A. DiSabatino, *Way of Necessity Over Another's Land, Where a Means of Access Does Exist, But is Claimed to be Inadequate, Inconvenient, Difficult, or Costly*, 10 A.L.R.4th 477 (1981).

■ Under the test of proportionality, a natural obstruction makes land privately inaccessible where the cost of making the land reasonably accessible is disproportionate to the value of the land. *See LeSatz v. Deshotels*, 757 P.2d 1090, 1093 (Colo. App.1988) (no evidence that cost of construction of bridge was grossly in excess of value of land); *Eisenbarth v. Delp*, 70 Idaho 266, 215 P.2d 812, 814 (1950); *Miller*, 36 Ill.Dec. 68, 400 N.E.2d at 491 ($25,000 cost to build bridge across forty-foot-wide creek that is four feet deep, when compared to a $500–900 annual agricultural income from the land is disproportionate where can inexpensively access neighbor's land for ingress/egress); *Badura v. Lyons*, 147 Neb. 442, 23 N.W.2d 678, 684 (1946) (cost of improvement compared to value of land); *Daniel v. Fox*, 917 S.W.2d 106, 111 (Tex.Ct.App.1996); *but see McCluggage*, 270 P.2d at 253 ($3500–4500 cost to build bridge across twenty-to-thirty foot wide and one-and-a-half foot deep creek not so prohibitive as to permit access across neighbor's land). In many cases, this test will consider the cost of constructing a way across the natural obstruction with the value of the land benefited by the way. *Miller*, 36 Ill.Dec. 68, 400 N.E.2d at 491. In other cases it may be appropriate to also consider the value of the land sought to be condemned. Thus, the test does not employ strict guidelines, but like the first

inquiry relies on the standard of reasonableness, and requires all the facts to be considered.

■ In considering the first inquiry in this case, Owens acknowledged there was no present access for farm machinery through the creek. Thus, the fighting issue is whether reasonable access can be gained by constructing a crossing through or over the creek at a reasonable cost under the test of proportionality.

Upon our review of all the evidence, we find Owens failed to prove the Brownlies' property is not land locked. The evidence offered by Owens to support the claim that reasonable access can be gained by making modifications to the creek was speculative. There was no evidence of the cost of constructing a bridge or culvert. The record also failed to reveal the value of the land west of the creek to compare to the cost of construction. Additionally, the Brownlies offered evidence to create sufficient doubt over the feasibility of the improvements proposed by Owens. Owens failed to meet his burden of proof.

## V. Challenge to the Application For Condemnation.

Owens claims the entire proceedings were rendered null and void because the condemnation application failed to set forth sufficient information to support an initial judicial determination that the property was land locked. He also claims the petition failed to disclose other relevant

information that would have caused the application to be denied by the chief judge.

■ An applicant for condemnation must comply with the condemnation statute. *Aplin v. Clinton County*, 256 Iowa 1059, 1061, 129 N.W.2d 726, 727 (1964). However, the information Owens claims should have been presented in the application is not required to be contained by the statute. *See* Iowa Code § 6B.3.[2] The condemner under section 6A.4(2) is not required to explain the theory to support the claim of "no public or private way" to the land, but only "the purpose for which the condemnation is sought." *See id.* § 6B.3(4). The Brownlies alleged in the application their property was "land locked" and they needed "ingress and egress." We believe this constituted sufficient compliance.

We recognize the chief judge is required to make a quasi judicial determination of the legal sufficiency of the application and further determine the applicant is empowered to exercise condemnation. *See Johann*, 207 N.W.2d at 24. However, this determination is made from the information required to be placed in the application under section 6B.3. *Id.* (interpreting Iowa Code section 472.3, the precursor to Iowa Code section 6B.3[3]). The statute does not contemplate that the applicant who claims to be land locked be required to litigate the issue before exercising the power of condemnation. *Carter v. Barkley*, 137 Iowa 510, 514–15, 115 N.W. 21, 22–23 (1908).

---

**2.** Iowa Code section 6B.3 sets forth the requirements for an application for condemnation. They include:

1. A description of all the property in the county, affected or sought to be condemned, by its congressional numbers, in tracts not exceeding one-sixteenth of a section, or, if the land consists of lots, by the numbers of the lot and block, and plat designation.
2. A plat showing the location of the right-of-way or other property sought to be condemned with reference to such description.

3. The names of all record owners of the different tracts of land sought to be condemned, or otherwise affected by the proceedings, and of all record holders of liens and encumbrances on such lands; also the place of residence of all such persons so far as known by the applicant.
4. The purpose for which condemnation is sought.
5. A request for an appointment of a commission to appraise the damages.

Iowa Code § 6B.3(1)-(5).

**3.** The Code editor transferred Iowa Code section 472.3 to section 6B.3 in 1993.

We conclude the application contained sufficient information for the chief judge to determine the Brownlies were authorized to condemn the land. In permitting the owners of land locked property to condemn land to establish a public way, our legislature has concluded that there is a public benefit for condemning land for access to land locked property. *Luloff I*, 512 N.W.2d at 273. Our legislature has also concluded a private landowner could utilize the statute just as a public entity is authorized to exercise the power of condemnation. The court accepts the legislatively granted authority, and a condemnee who believes no factual basis exists for the authority is afforded an opportunity to assert a subsequent challenge.

## VI. Procedural Due Process Challenge.

■ Owens claims the statutory condemnation scheme is procedurally defective because it fails to provide the condemnee with notice and opportunity to be heard before the application is judicially approved.

■ Due process must be afforded where state action threatens to deprive an individual of a protected liberty or property interest. *Callender v. Skiles*, 591 N.W.2d 182, 189 (Iowa 1999). If a protected interest is involved, we evaluate what process is due. *Id.* There are two fundamental requirements involved, notice and the opportunity to be heard. *In re Estate of Adams*, 599 N.W.2d 707, 710 (Iowa 1999). The requirements, however, are flexible and the type of hearing required depends upon:

"(a) the private interests implicated; (b) the risk of an erroneous determination

by reason of the process accorded and the probable value of added procedural safeguards; and (c) the public interest and administrative burdens, including costs that the additional procedure would involve."

*Skiles*, 591 N.W.2d at 189–90 (quoting *In re Marriage of Seyler*, 559 N.W.2d 7, 9 (Iowa 1997)).

■ Owens argues he was denied due process when he was not given an opportunity to argue his opposition to the condemnation prior to the decision by the chief judge to permit condemnation to proceed. However, a pre-determination hearing is not required to satisfy due process. Rather, the hearing must "be granted at a meaningful time and in a meaningful manner." *Fuentes v. Shevin*, 407 U.S. 67, 80, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556, 570 (1972) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62, 66 (1965)). The key is "whatever its form, opportunity for [the] hearing must be provided before the deprivation at issue takes effect." *Id.* at 82, 92 S.Ct. at 1995, 32 L.Ed.2d at 571.[4]

Owens was afforded ample notice and opportunity to submit his opposition to the proposed condemnation. For example, he was notified of the appointment of a Condemnation Commission and the date of the assessment of his property two days after the chief judge granted Brownlie's application, and over three weeks prior to the assessment. Shortly after the assessment, Owens filed a petition in equity seeking declaratory judgment and an injunction. The Brownlies filed a motion to dismiss in response to this petition, upon which the court heard oral arguments. Owens was able to present evidence to the court and

---

4. In *Fuentes,* the Supreme Court ruled unconstitutional two prejudgment replevin statutes that did not provide for a pre-deprivation hearing. *Fuentes,* 407 U.S. at 96, 92 S.Ct. at 2002, 32 L.Ed.2d at 579. However, it noted that such pre-deprivation hearings were not necessary where an important governmental or public interest is served by the quick adjudication of rights. *Id.* at 90–92, 92 S.Ct. at 1999–2000, 32 L.Ed.2d at 575–77. In the case of land locked property, our legislature has declared immediate access to one's property an immediate public interest, thus permitting the determination for condemnation to be made upon the initial application, postponing the condemnee's opportunity to be heard until after such determination. *Id.* at 90, 92 S.Ct. at 1999, 32 L.Ed.2d at 575.

cross-examine Brownlies' witnesses at this hearing. The court ruled in favor of Owens on the Brownlies' motion to dismiss. There was an additional hearing on Owens' request for a temporary injunction. Finally, there was a trial to the court on Owens' petition in equity.

 When a hearing is afforded, "due process demands contestants be given notice thereof sufficient to permit a reasonable opportunity to appear and assert their rights." *Hyde v. Anania*, 578 N.W.2d 647, 650 (Iowa 1998) (quoting *Smith v. Iowa Employment Sec. Comm'n*, 212 N.W.2d 471, 472 (Iowa 1973)). Owens cannot argue he was not given sufficient notice of the action against his property, for he took substantial steps to alert the court of his objection and resistance to the condemnation. Additionally, Owens was given three separate hearings before the court to present his evidence. Owens cannot now argue his rights were procedurally infringed upon, for he was afforded all the due process to which he was entitled.[5]

## VII. Conclusion.

On our de novo review, we find Owens failed to establish the Brownlies had a public or private way to their land west of Dry Creek. We conclude the procedure for condemnation does not violate the Due Process Clause under the state or federal constitutions in light of the opportunity provided for a hearing to challenge the right to condemn land.

### AFFIRMED.

All justices concur except LAVORATO, J., who takes no part.

---

5. The process established by the legislature for the condemnation of another's land by a private party, in effect, places the burden of protecting one's land on the landowner-condemnee by granting the condemner the power of eminent domain. *See* Iowa Code § 6A.4(2). While the argument that shifting this burden to the condemnee infringes upon his constitutional rights by denying him due process was not raised, we note this is not a consideration in the procedural due process analysis. The key to the procedural due process analysis is to ensure any deprivation of private property is fair. 16B Am.Jur.2d *Constitutional Law* § 901, at 485 (1998). In doing so, the court focuses upon the procedure afforded, namely notice and an opportunity to be heard, which were both fulfilled here. *Id.* § 902, at 488; *see also Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S.Ct. 1148, 1153–54, 71 L.Ed.2d 265, 273 (1982); *Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548, 556 (1972).