# IN THE COURT OF APPEALS OF IOWA

No. 14-2099
Filed February 10, 2016

**NICHOLAS L. EVANS and LAURIE B. EVANS,**
     Plaintiffs-Appellees,

**vs.**

**ALAN WORTH and LILLIAN WORTH,**
     Defendants-Appellants.
_____

Appeal from the Iowa District Court for Taylor County, John D. Lloyd, Judge.

Defendants appeal from the district court's rulings on plaintiffs' petition challenging the defendants' exercise of eminent domain and condemnation proceedings. **AFFIRMED.**

Elisabeth S. Reynoldson of Reynoldson & Van Werden, L.L.P., Osceola, and Arnold O. Kenyon III of Kenyon & Nielsen, P.C., Creston, for appellants.

Rod K. Maharry and Jami J. Hagemeier, Des Moines, for appellees.

Heard by Vaitheswaran, P.J., and Doyle and Mullins, JJ.

**DOYLE, Judge.**

Alan and Lillian Worth ("Worth") initiated a condemnation proceeding seeking to acquire a public way over the neighboring property of Nicholas and Laurie Evans ("Evans") for purpose of ingress and egress.[1] Evans subsequently filed a petition challenging Worth's exercise of eminent domain and condemnation proceedings; asserting the Worth property was not land locked, and reasonable access could be gained by making modifications to the Worth property. The district court granted Evans's petition and enjoined Worth from proceeding with condemnation of an access across the Evans property. Worth appeals, claiming the district court's order should be reversed because Evans failed to meet his burden to prove Worth's property was not land locked. Worth also challenges the district court's award of attorney fees to Evans. For the following reasons, we affirm the order of the district court.

*I.      Background Facts and Proceedings*

Worth owns property in the northeast quarter of section thirty in rural Taylor County. Worth also owns property in the southeast quarter of section nineteen which abuts the north side of his section thirty property. Worth also owns property in the southwest quarter of section nineteen, part of which abuts his southeast quarter of section nineteen property. Evans owns neighboring property that abuts Worth's property to the north, east, and south. James and Jennifer Miller, who are not involved in this action, own the property abutting Worth's section thirty tract to the west. Worth's property in sections nineteen and

---

[1] For sake of simplicity we refer to the parties in the singular as Worth and Evans.

thirty is bisected by the 102 River. The following rudimentary map depicts the layout of the property at issue:



The property at issue (Worth's section thirty property) came out of the Conservation Reserve Program in 2008. Worth decided to put the property, which is approximately forty acres, into row crop production. Prior to that time, Worth had accessed the property by crossing the 102 River "on foot with a backpack" to manage noxious weeds.

Worth obtained estimates from contractors in the area to construct a low water crossing over the 102 River so he could access the property with farm machinery. Jerry Freshour submitted a bid for $10,000; Kenneth Norris submitted a bid for $17,000 to $17,500; Earl Watkins submitted a bid for $18,000. Ultimately, Worth hired Freshour to construct a low water crossing. Freshour

excavated the river banks and moved more than 200 tons of rock to complete the crossing, but it failed within a few weeks. Freshour told Worth it could be fixed but it was "going to do the same thing it did before."

Worth instituted a condemnation proceeding alleging his section thirty property was "land locked" and had no access to a public roadway. He sought to condemn a strip of land over Evans's property to obtain access to a public road. In response, Evans filed a petition challenging Worth's exercise of eminent domain and condemnation proceedings, claiming Worth's property was "not land locked" and "[r]easonable access to the Worth property [could] be gained by making modifications to the Worth property."

At trial, the district court heard testimony from Worth, Evans, and their respective expert witnesses. The parties also submitted various exhibits, including photographs, maps, and estimates. The district court granted Evans's petition and enjoined Worth from obtaining access through private condemnation proceedings under Iowa Code chapters 6A and 6B (2013). In reaching its conclusion, the court determined Worth's property was not land locked because a reasonably feasible access existed across the 102 River; therefore Worth was not authorized to condemn Evans's land as a public way.

Worth filed a motion pursuant to Iowa Rule of Civil Procedure 1.904(2), which the district court denied. Evans filed a motion to set attorney fees and costs. The district court entered a ruling ordering Worth to pay $10,597.50 in attorney fees to Evans, along with $400 in expert witness and travel fees. Worth appeals.

## II.    *Standard of Review*

This action was tried in equity; therefore our review is de novo.  Iowa R. App. P. 6.907.  However, we give weight to the factual findings of the district court, especially when considering the credibility of witnesses.  *Owens v. Brownlie*, 610 N.W.2d 860, 865 (Iowa 2000).  We review a district court's award of attorney fees for an abuse of discretion.  *Soults Farms*, *Inc. v. Schafer*, 797 N.W.2d 92, 111 (Iowa 2011).

## III.    *Eminent Domain—Condemnation of Land Locked Property*

"Although eminent domain, the power to seize private property, is typically exercised by governmental bodies, the legislature has conferred a narrow power of eminent domain upon private citizens in Iowa."  *Green v. Wilderness Ridge*, *L.L.C.*, 777 N.W.2d 699, 702 (Iowa 2010).  This power is conferred upon private citizens who own or lease land which has no public or private access.  Iowa Code § 6A.4 ("The right to take private property for public use is hereby conferred: . . . . (2) Upon the owner or lessee of lands, which have no public or private way to the lands, for the purpose of providing a public way which will connect with an existing public road.").  Accordingly, an owner of "land locked" property is permitted to institute condemnation proceedings to secure a public way over other land to permanently solve the inability to access the property.  *Owens*, 610 N.W.2d at 865.

> [T]he right of an owner of land locked property to proceed under the statute depends upon "the existence of facts upon which the right rests."  An owner who seeks to exercise the right of condemnation must in fact have no public or private way from the land to a street or highway.

*Id.* at 866 (quoting *Strawberry Point Dist. Fair Soc. v. Ball*, 177 N.W. 697, 698 (Iowa 1920).

Worth followed the procedures for the condemnation of private property set forth in Iowa Code chapter 6B in filing his application for condemnation.[2] *See id.* at 865. Evans responded by filing a petition challenging Worth's authority to condemn, alleging Worth's property was not land locked as required by section 6A.4(2). After a hearing, the district court determined Evans had sustained his burden of proof by a preponderance of the evidence to show Worth was not authorized under section 6A.4(2) to condemn land as a public way because Worth's property was not land locked.[3] Worth challenges the district court's conclusion on appeal.

"A natural obstruction can be so obtrusive that it essentially creates two separate tracts of land." *Id.* at 866. Here, the district court acknowledged the parties' agreement that Worth has no access to the property at issue "without some change to the present situation." Although the parties agreed there is no public or existing private access to the property, Evans claims Worth could acquire private access to the property across the 102 River by making some minor modifications to the area. Worth counters, contending an unvented low

---

[2] Specifically, Worth filed his application for condemnation with the chief judge of the Fifth Judicial District, which includes Taylor County. Pursuant to the procedure outlined in chapter 6B, the chief judge then entered an order selecting and appointing compensation commissioners and alternate commissioners.

[3] *Owens*, cited by the district court, holds "the burden of proof in an action to challenge the authority of the condemning entity to condemn land rests with the landowner whose land is sought to be condemned." 610 N.W.2d at 866. We note that *Owens* predates the enactment of Iowa Code section 6A.24(3) which provides, in part: "For any action brought under this section, the burden of proof shall be on the acquiring agency to prove by a preponderance of the evidence that the finding of public use, public purpose, or public improvement meets the definition of those terms." In view of our disposition of this appeal, we need not address the apparent conflict.

water crossing over the 102 River is unsuitable for the location, and a vented low water crossing "is neither possible nor financially reasonable."

"[A]n existing right of access to defeat the right of condemnation for an access route must be reasonably adequate for the intended purpose." *Id.* at 868. In examining this issue, courts are to consider "the ability to change the condition of the land to provide for access." *Id.*

> If one has a way through his own land, he cannot impose a way of necessity through his neighbor's land, unless his own way is not reasonably adequate or its cost is prohibitive. Mere inconvenience or mere cost, as the basis for using another's land to get access to one's own property, falls short of meeting this test.

*Id.* (citation omitted).

Here, where reasonable access does not exist, the question turns to whether the land can be changed by the owner to provide reasonable access. "Under the test of proportionality, a natural obstruction makes land privately inaccessible where the cost of making the land reasonably accessible is disproportionate to the value of the land." *Id.* "[T]he test does not employ strict guidelines, but . . . relies on the standard of reasonableness, and requires all the facts to be considered." *Id.* at 868-69. In reviewing the facts presented here, we consider the cost of constructing a way across the natural obstruction with the value of the land benefited by the way. *See id.* at 869.

At trial, Evans testified the 102 River also flowed through his property. According to Evans, there were times when the water flowed rapidly and out of its banks but "[t]ypical flow would be hardly get your shoes wet to cross it." Evans testified Kenneth Norris took a bridge out, disposed of it, and constructed a vented low water crossing on Evans's property in 2004 for approximately

$15,000. Norris used riprap and large rock, and he drove steel pilings down into the ground several feet to support it. The structure has a concrete floor with a tube underneath, "so it can take care of the trickle of water." Evans explained that when the water level rose, it crossed the low water crossing, which was what the crossing was designed to do. Evans testified at the location of his crossing, "[b]ank to bank, [the creek was] probably 30 feet." Evans testified he had had no problems with the crossing over the years. With regard to Worth's property, Evans stated it was not land locked: "All you have to do is make a crossing, then it's good to go."

Norris stated he has worked in excavating for approximately twenty years. Norris testified he was familiar with the 102 River, and he had constructed more than twenty large, low water stream crossings in and around Taylor County. Norris testified he had constructed only one low water crossing that failed, in Missouri, and explained that crossing had failed in a "complete flood situation." Norris testified he submitted a bid to Worth for construction of a low water crossing for approximately $17,000 to $17,500. Norris stated Worth responded that the price was high and asked Norris to exchange some of the materials Norris usually used for "smaller" and "cheaper" materials. Norris told Worth the rock Worth requested "wouldn't be usable" and "would [not] stay." After revisiting the property in April 2014, Norris estimated he could fix the failed crossing for $15,500, and that it would cost Worth approximately $400 to $500 annually for normal maintenance of the crossing.

Worth presented expert testimony from Peter Crawford, a licensed civil engineer. Crawford testified Worth's access to the property at issue was

"prevented by the 102 River" without some kind of structure or construction or some other man-made work. Crawford stated he was not "real familiar" with low water stream crossings, so he consulted the Lucas County Engineer and a document published by the Iowa State University and the Iowa Highway Research Board in preparing his cost estimates. Crawford estimated it would cost $96,000 to construct a vented ford low water crossing, and an additional $2000 to $3000 annually to maintain it. Crawford acknowledged he has not been involved in constructing or maintaining any crossings, and did not contact any contractors in the business of constructing low water crossings.

Worth testified the subject property was worth "[e]asily $8000" per acre, and that forty acres were at issue. Worth stated the property was "farmable," and he planned to get the property into row crop production once he could access it.

The district court concluded:

> The burden of proof in this matter rests with the plaintiffs. Thus, it is the Evans's obligation to show that the defendants "were not authorized under the statute to condemn land as a public way because their property was not land locked." The court concludes that they have met their burden.
>
> In reviewing all of the evidence presented, the court is persuaded by the testimony of Kenneth Norris. He is experienced in construction of these low water structures and is knowledgeable about the particular location involved. He was consulted by the defendants when the initial crossing was constructed and was apparently not hired because Mr. Freshour was cheaper. Although defendant's expert is an engineer, his experience with low water crossings is notably lacking and he consulted no contractors in his research into such crossings.
>
> The land involved here is valuable. Defendant Alan Worth estimated the value at $8000 per acre. At that price, the cost of a crossing would amount to a little less than 5% of the value of the farm, an investment that seems relatively small to the court, and which will be recoverable over time when the land is put to productive use. Certainly, there will be annual maintenance as well but that cost appears to be minimal.

For the reasons stated above, the plaintiffs' petition is granted and defendants are enjoined from proceeding with condemnation of an access across plaintiffs' land.

Upon our de novo review, we are to give weight to the factual findings of the district court, especially when considering the credibility of witnesses. *See Green*, 777 N.W.2d at 702. We conclude the evidence amply supports the district court's credibility finding in this case. Norris has twenty years' experience in constructing low water crossings over waterways similar to the one at issue, and indeed, he has constructed a functioning crossing on Evans's property. Norris testified he could reconstruct the crossing on Worth's property for $15,500 that would require approximately $400 to $500 to maintain per year.

Worth testified the forty-acre parcel at issue was worth $8000 per acre. And by accessing it, Worth would be able to earn income on the property by putting it into crop production. Considering the cost of constructing a way across the natural obstruction, and considering the value of the land benefited by the crossing, we conclude the cost is far from disproportionate to the value of the land. Consequently, we conclude Worth's property is not land locked because reasonable access can be gained by constructing a crossing at a reasonable cost under the test of proportionality. We therefore affirm the district court's ruling granting Evans's petition and enjoining Worth from proceeding with condemnation of an access across Evans's land.

## IV.    *Attorney Fees*

Worth also challenges the district court's award of attorney fees to Evans. Iowa Code section 6A.24(3) provides, in part:

If a property owner or a contract purchaser of record or a tenant occupying the property under a recorded lease prevails in an action brought under this section, the acquiring agency shall be required to pay the costs, including reasonable attorney fees, of the adverse party.

Worth notes chapter 6A does not define the term "acquiring agency" and argues, "When viewed in the context of the subsection in which it was included, it is clear that the term 'acquiring agency' was not intended to apply to private landowners pursing private condemnation actions." In awarding attorney fees, the district court concluded:

In this court's view, a reading of chapters 6A and 6B together makes clear the legislative intent that an acquiring agency is to pay attorney fees if it fails to establish its right to proceed with condemnation in an action brought by the landowner. It also appears to be clear that [Worth] in this case [is] an acquiring agency, both by definition in chapter 6B, as related statute to chapter 6A, and by reading chapter 6A as context for section 6B.

While not defined in chapter 6A (the chapter conferring the power to condemn), the term "acquiring agency" is defined in chapter 6B (the chapter setting forth condemnation procedures).[4] Section 6B.1(2) states: "For purposes of this chapter, an '*acquiring agency*' means the state of Iowa or any person or entity conferred the right by statute to condemn private property or to otherwise exercise the power of eminent domain." Worth is conferred the right to condemn private property under section 6A.4(2); he is thus an "acquiring agency" as defined by the legislature in section 6B.1(2). *Cf.*, *e.g.*, *Clarke Cty. Reservoir Comm'n v. Robins*, 862 N.W.2d 166, 168 (Iowa 2015) (holding a joint public-private commission organized under chapter 28E could not exercise the power of

---

[4] As noted above, Worth appropriately followed the chapter 6B statutory procedures in filing his application for condemnation.

eminent domain or serve as an acquiring agency because the private members lacked eminent domain power). In addition, section 6B.1(2) also states: "In the exercise of eminent domain power, the words '*applicant*' and '*condemner*' mean acquiring agency as defined in this subsection, unless the context clearly requires otherwise." There is no dispute Worth is the "applicant" in the condemnation action; he is thus an "acquiring agency" as defined by the legislature in section 6B.1(2).

> The polestar of statutory interpretation is to give effect to the legislative intent of a statute. In determining legislative intent, we avoid placing undue importance on isolated portions of an enactment by construing all parts of the enactment together. In the end, the object of our inquiry is to seek a result that will advance, rather than defeat, the statute's purpose.

*Rolfe State Bank v. Gunderson*, 794 N.W.2d 561, 565-66 (Iowa 2011) (citations omitted). Chapters 6A and 6B necessarily go hand-in-hand. Chapter 6A concerns conferring and exercising the power of eminent domain (condemnation); chapter 6B concerns procedure under eminent domain. Both chapters employ the use of the term acquiring agency. Although the term is defined only in chapter 6B, we seriously doubt the legislature intended a different definition for the same term as it appears in chapter 6A.[5] Reading the applicable

---

[5] Furthermore, section 6A.24 was part of legislation enacted to amend both chapters 6A and 6B. *See* 2006 Ia. Legis. Serv. 1st. Ex. Sess. ch. 1101, § 5. The "effective and applicability dates" section of the Act states:

> 5. The remainder of this Act, being deemed of immediate importance, takes effect upon enactment and applies to applications for condemnation filed pursuant to section 6B.3 on or after the date of enactment, with the following exceptions:
> a. The section of this Act enacting section 6A.23 [now 6A.24] applies to applications for condemnation pending on the date of enactment of the Act if the appropriate parties have not been served with a notice of assessment pursuant to section 6B.8 as of the date of enactment of this Act.

provisions of chapters 6A and 6B together, we conclude Worth is an "acquiring agency" for purposes of section 6A.24(3). Therefore, we discern no abuse of discretion in the court's award of attorney fees to Evans.

We affirm the ruling of the district court.

**AFFIRMED.**

---

2006 Ia. Legis. Serv. 1st. Ex. Sess. Iowa Acts ch. 1001, § 49. The legislature notes indicate the interrelationship of chapters 6A and 6B. This substantiates our conclusion the legislature intended a synonymous meaning for the term as it is used in both chapters 6A and 6B; if the legislature intended otherwise, it surely would have said so.