In the Matter of the Condemnation of Certain Land by Norm LULOFF.

Nancy L. LICHTY, Appellant,

v.

Norm LULOFF, Appellee.

No. 92–1609.

Supreme Court of Iowa.

Feb. 23, 1994.

John J. Hines of Dutton, Braun, Staack, Hellman & Iversen, Waterloo, for appellant.

Christopher L. Bruns of Tom Riley Law Firm, P.C., Cedar Rapids, for appellee.

Considered by HARRIS, P.J., and CARTER, LAVORATO, SNELL, and TERNUS, JJ.

CARTER, Justice.

Plaintiff, Nancy L. Lichty, appeals from the district court's denial of injunctive relief in an action challenging appellee Norm Luloff's right to condemn an access route across lands owned by Nancy and her husband, Charles. After reviewing the record and considering the arguments of the parties, we affirm the district court's decree on condition. We remand the case to that court for further proceedings designed to conform its decree to the conditions that we impose.

Norm Luloff owns five acres of timberland south of the Lichtys' farm. He alleges this property is without access to a public roadway. As shown on the diagram below, the Luloff acres lie south of five acres of timber owned by Beverly Loeb. The Loeb timber is directly south of a portion of the Lichtys' 300–acre farm. The Lichtys' adjoining land is suitable for the growing of crops but, at the time of trial, was in the Conservation Reserve Program. The Lichty property is bordered on the north by Jubilee Road and on the east by Spring Creek Road.

Relying on Iowa Code section 471.4(2) (1989), Luloff seeks to condemn a sixteen-foot-wide access way from the northwest corner of his property to Jubilee Road.[1] The proposed roadway, which is identified on the diagram as the "cemetery route," would extend approximately 2750 feet across the Lichtys' land. Other locations and routes identified in the diagram will be discussed later in this opinion.

1. That statute provides, in part:
    The right to take private property for public use is hereby conferred:
    . . . .
    2. *Owners of land without a way to the land.* Upon the owner or lessee of lands, which have no public or private way to the lands, for the purpose of providing a public way, not exceeding forty feet in width, which will connect with an existing public road.

Loeb Property

Luloff Property

......... Pasture Route

—.—.—. Cemetery Route

—...—...— Logging Route

The eminent domain proceeding that is the subject of this action was initiated by Luloff's predecessors in title in October 1989.[2] A few days after their application was filed, Nancy Lichty sought and obtained a temporary injunction restraining the prospective condemners from proceeding. It is her purpose to have that temporary injunction made permanent. After Luloff acquired the allegedly landlocked timber acres from the original condemners, he substituted himself for his grantors in both the eminent domain proceeding and the injunction action, seeking to halt that proceeding.

In her injunction action seeking to block the proposed condemnation, Nancy Lichty

---

2. Prior to initiating the eminent domain proceeding for an access road under § 471.4(2), Luloff's grantors had commenced an action seeking an easement of necessity across the Lichtys' lands to Jubilee Road. That action, which was commenced in 1986, was later dismissed for nonprosecution under Iowa Rule of Civil Procedure 215.1.

has asserted that Luloff has an adequate means of access to his property across another portion of the Lichtys' lands identified in the diagram as the "pasture route." She also asserts that Luloff's proposed route is not the nearest feasible route to an existing public road and that it will interfere with orchards, buildings, and cemeteries. Finally, Nancy Lichty asserts that, if approved, the proposed condemnation will not constitute a taking for a public purpose. We will separately consider each of these contentions. Additional facts material to the issues on appeal will be set forth in our discussion of the points of law raised by the parties.

I. *Whether Luloff Has an Access to a Public Roadway That Will Defeat a Right of Eminent Domain Under Section 471.4(2).*

■ Nancy Lichty argued strenuously in the district court and continues to argue on her appeal that the pasture route shown on the diagram provides an adequate existing access for Luloff to reach his property. That circumstance, she suggests, should bar his right to condemn a different access route. We consider this claim in light of the settled rules of law on this issue.

■ We have recognized that the right to proceed under section 471.4(2) "depends entirely upon the existence of the facts upon which the right rests." *Strawberry Point Dist. Fair Soc'y v. Ball,* 189 Iowa 605, 609, 177 N.W. 697, 698 (1920). Thus, to justify condemnation proceedings to secure a public way over the land of another, it must appear that the person seeking to exercise the right has no public or private way from his land to a street or highway. *Id.* But, our cases also make clear that the public or private access way that will defeat a right to condemn under this statute must be an existing way. *Miller v. Kramer,* 148 Iowa 460, 469, 126 N.W. 931, 934 (1910). For this purpose, a legal right to compel an easement of necessity is not the equivalent of an existing way. *Id.; see also Anderson v. Lee,* 191 Iowa 248, 252, 182 N.W. 380, 382 (1921). We have also recognized that the existing right of access that will defeat the right to condemn an access route must be reasonably adequate for the intended purpose. *Id.*

The early case of *Carter v. Barkley,* 137 Iowa 510, 115 N.W. 21 (1908), is instructive on the issues now before the court. There, we rejected the contention that a former private access route to the condemner's land, which had subsequently been partially fenced by the owner and barred by gates, served to defeat a right to condemn under the statute. In so doing, we stated:

> [T]he statute evidently does not contemplate that the owner who claims to have no way to his land shall be compelled, before inviting the aid of the statute, to try one or more lawsuits for the purpose of finding out whether he has a way or not. The statute, in our judgment, should be construed to mean that, unless a party has a way, either public or private, which is unobstructed and unquestioned, he may institute proceedings under the statute. If the defendants herein had said to the plaintiffs, "You have a way from your land north, and we do not question your right to use it without the obstruction of gates," a different question would be presented. But even in their pleadings, the defendants, in a measure, justify the use of the gates in question, and make no suggestion that they will be removed and the way kept open.

*Id.* at 514–15, 115 N.W. at 22–23.

Judged by the standards that our case law has established, the pasture route was clearly not shown to be an existing access way that was "unobstructed and unquestioned." The evidence revealed and appellant in her argument to this court does not dispute that the right to use this route by Luloff and his predecessors was entirely permissive prior to the initiation of eminent domain proceedings. After those proceedings were in progress, the Lichtys did offer a form of easement to Luloff's predecessors in interest, although that offer was not renewed to Luloff after he was substituted for his grantors. The form of easement offered to Luloff's predecessors was conditioned upon the existence of a series of gates obstructing travel on the pasture route.

■ Other than the "pasture route," the only contention that appellant makes concerning an existing access available to Luloff

involves the "logging route" shown on the diagram. A substantial portion of that route crosses the lands of persons who are not parties to this litigation. There is absolutely no showing in the record that Luloff has an unobstructed and unquestioned right of access from his timber plot to Spring Creek Road across the property of those persons. The district court correctly found that Luloff had no existing right of access sufficient to defeat his right of condemnation under section 471.4(2).

## II. *Validity of the Route Sought to be Condemned.*

█ Nancy Lichty also challenges the route that Luloff has chosen for purposes of crossing her property to reach Jubilee Road. Seizing on the words of the statute referring to a route "along the line which is the nearest feasible route to an existing road," she argues that the route sought to be condemned is not the nearest feasible route. If this were the controlling consideration for establishing the route to be condemned under section 471.4(2), it would be difficult to sustain her claim. The pasture route is longer than the cemetery route. It is also circuitous and traverses uneven terrain. In the best of lighting and weather conditions, the pasture route is a challenge to negotiate. The "logging route," on the other hand, although a few feet shorter in total distance than the cemetery route, traverses steeper terrain and involves two ninety degree turns. It crosses the property of three different landowners, much more of which is utilized for crop production than the lands traversed by the cemetery route.

█ We are convinced, however, that the criterion for route selection is not, as Nancy Lichty suggests, the selection of the nearest feasible route. The statutory directive, in fact, reads as follows:

> The condemned public way shall be located on a division, subdivision or "forty" line, or immediately adjacent thereto, and along the line which is the nearest feasible route

to an existing public road, or along a route established for a period of ten years or more by an easement of record or by use and travel to and from the property by the owner and the general public.

Iowa Code § 471.4(2) (1989).

█ Interpreting the words of this statutory directive in context, we conclude that the word "line" in the phrase "along the line which is the nearest feasible route to an existing public road," refers to a "division, subdivision, or 'forty' line." Of the three routes under consideration only the "cemetery route" meets the statutory criterion of being along a "division, subdivision or 'forty' line."[3] The alternative statutory criterion of a route along an easement of record or a route used by the owner and the general public for ten or more years is of no avail in the present case. The only evidence that such a route was utilized for ten years or more was some testimony concerning past use of the pasture route by hunters, mushroom hunters, and wood gatherers. We find that the evidence presented fails to show that Luloff or his predecessors in interest used that route for a period of ten years to travel to and from their property. In addition, the district court's finding that the general public did not travel to and from the Luloff property over this route for a period of ten years was amply supported by the evidence. In the absence of a route previously used for ten or more years by the property owner and the general public, the requirement that the route proceed adjacent to a division, subdivision, or "forty" line was triggered. As the district court concluded, Luloff's proposed condemnation follows the only route that satisfies the latter requirement.

## III. *Alleged Obstruction With Buildings, Orchards and Cemeteries.*

█ The statute under which Luloff is proceeding provides that the condemned access route "shall not interfere with buildings, orchards, or cemeteries." Iowa Code § 471.-4(2) (1989). Nancy Lichty asserts that Lu-

---

**3.** The southern 1733 feet of the proposed route runs adjacent to the west side of the line separating the Northwest Fractional Quarter of Section 1–87–11 from the Northeast Fractional Quarter

of Section 2–87–11. The remainder of the proposed route runs adjacent to the east side of that "forty" line.

loff's proposed route interferes with all of these things.

The district court found on ample evidence in the record that there are no existing orchards with which the proposed route will interfere. We approve that finding. With respect to any interference with the cemetery or with the machine shed shown on the diagram near Brad Lichty's house, the district court correctly found from the evidence that there was no actual physical encroachment with those properties. The proposed road runs adjacent to the west edge of the cemetery property. It runs eighty-two feet west of the west entrance to the machine shed.

■ In interpreting section 471.4(2), we believe that the word "interfere" as used therein extends beyond actual physical encroachment and also includes unreasonable interference with a right of access to buildings and cemeteries. As to the machine shed, the district court concluded that the right of access to the west entrance to that building by long trucks (which were shown by the evidence to occasionally unload there) could be accommodated by those trucks using a portion of the newly proposed roadway for maneuvering.

■ The statute under which we are proceeding contemplates that the condemner shall provide "easement for access to the owner of property severed by the condemnation." While those words might be strictly interpreted to include only access to croplands physically severed by the obstruction created by the condemned roadway, we believe that the statutory language also encompasses an easement for access to buildings whose entrance has been obstructed by the condemned access route. Consequently, in affirming the district court's decree in the present case, we do so on condition that the decree be modified to require that the grade of the proposed roadway not interfere with access to the cemetery or the Lichtys' buildings. If the grade of the roadway does not interfere with such access, then the use of the roadway is otherwise available to the Lichtys and cemetery patrons because of its public character. Because we are required to remand the case to the district court for another purpose, as disclosed later in this opinion, the decree may be modified at that time.

## IV. Constitutional Challenges.

■ We next consider the constitutional challenges made by appellant to the proposed condemnation of an access route across the Lichtys' property. The foremost of these challenges is the contention that the resulting taking will be for a private rather than a public purpose. That circumstance, it is claimed, violates the requirement of the Fifth Amendment to the Federal Constitution and Article I, Section 18 of the Iowa Constitution that takings by eminent domain must be for a public purpose. That argument has previously been rejected by this court as applied to this type of statute.

In the case of *Bankhead v. Brown*, 25 Iowa 540 (1868), the court considered the constitutionality of a predecessor statute. That statute was much like section 471.4(2), except that it provided that the road condemned for an access route was, at the conclusion of the eminent domain proceedings, a private road. The court found that there was a public purpose in enacting the statute, which was:

> [T]aking so much of A's land as may be necessary to establish a public highway, to enable B to have an outlet to the market, and to put him in communication with his neighbors, with the town, with the church, with the school, etc., is not in a just sense, although B be the person primarily and even principally benefited, the taking of A's property, for the private use of B, but for the general good.

*Id.* at 546–47. Notwithstanding that conclusion, the court found the statute in question to be unconstitutional because the road condemned ultimately fell completely under the dominion of the condemning private party so as to be in all respects a private road. Some years later, the legislature in 1874 Iowa Acts chapter 34, section 1 enacted a new version of the statute for condemning access to a roadway from landlocked property. This enactment differed from the statute found to be invalid in the *Bankhead* case, in that it made the resulting roadway a public roadway.

The constitutionality of that statute was subsequently upheld in *Phillips v. Watson*, 63 Iowa 28, 33, 18 N.W. 659, 661 (1884).

The underlying thesis of appellant's claim that the roadway that will result from Luloff's condemnation will be a private road rests entirely on the use anticipated to be made thereof. It is argued that it will be used almost entirely for Luloff's private benefit. That argument was considered and rejected in the *Phillips* decision, wherein we stated:

> [W]e think that it makes no difference that the mine-owner may be the only member of the public who may have occasion to use the way after it has been established. The character of a way, whether it is public or private, is determined by the extent of the right to use it, and not by the extent to which that right is exercised.

*Id.* at 33, 18 N.W. at 661. The present version of section 471.4(2) expressly provides that the eminent domain authority granted thereunder is "for the purpose of providing a public way ... which will connect with an existing public road." The legislature has conclusively established the public character of the roadway and its judgment in that regard may not be re-examined by this court. We thus find no merit in appellant's contention that the taking is for private purposes.[4]

■ Another constitutional challenge advanced by Nancy Lichty is her claim that the type of condemnation authorized by section 471.4(2) constitutes an improper delegation of sovereign power to a private person and thus violates Article III, Section I of the Iowa Constitution. We find no merit in this contention. There is no delegation of discretionary action in the challenged legislation. It sets forth tightly circumscribed criteria that allow "access" condemnation to landlocked property as a matter of right in all instances in which those criteria exist. Moreover, if an individual attempts to abuse the statutory provision, the courts can intervene to halt such abuse. Finally, we note that the con-

demners must pay all damages flowing from the condemnation.

## V. *Failure of the Proposed Route to Provide Access to the Condemner's Land.*

■ As a final issue, we consider appellant's claim that the proposed condemnation is of no avail for the purposes for which it is intended. This argument points out that the proposed roadway south from Jubilee Road terminates on a line parallel to the north boundary of Luloff's property. The roadway lies entirely west of the northwest corner of Luloff's tract. As a result of the terminus of the proposed access route, appellant urges that the route fails to provide access to Luloff's property. That fact, it is urged, renders the entire proceeding fatally defective. The district court rejected this argument on the theory that the road does in fact connect with a point on Luloff's land, *i.e.*, the monument marker on its northwest corner.

■ We are more concerned with the terminus of the proposed route than was the district court. It results, we believe, in a physical impossibility of Luloff gaining access to his property over the proposed route without first crossing either the Loeb property or the land lying west of Luloff's west property line.[5] Although it is reasonable to assume that Luloff would not proceed with the proposed condemnation if he did not have assurance from one or both of these abutting owners that he can cross their lands to reach his property from the proposed access road, we do not believe such an assumption provides a satisfactory basis for carrying on an otherwise inadequate condemnation under section 471.4(2). We believe the goal of the statute is not only to benefit the present owner of landlocked property but also to permanently solve the problem of access to that property in the future. A condemnation under section 471.4(2) should not be allowed to proceed that does not by itself serve to provide the necessary access to the landlocked property.

4. Appellant's due process and equal protection challenges to the proposed condemnation also rest on the contention that the taking is for private purposes. Because of our conclusion that that is not so, those arguments must also

fail. We discern a rational basis for the legislature's action in adopting § 471.4(2).

5. The ownership of the latter property is not established in the record.

As a result of the defect that we note in the route sought to be condemned, we affirm the district court's decree only on the condition that upon remand to that court Luloff provide evidence of a permanent easement of record across one or more of the abutting properties sufficient to provide access to his lands in conjunction with the route proposed to be condemned; or that Luloff amend or refile his application for condemnation to include a portion of one or both of the abutting properties sufficient to provide access to his property.[6]

The case is remanded to the district court for amendment of the decree in accordance with the views we expressed in Division III of this opinion and for monitoring the conditions that we have imposed in this final division of the opinion. Compliance with those conditions shall be demonstrated within 100 days of the issuance of the procedendo from this court. The district court, for good cause shown, may extend that time. Failure to comply with the conditions within the time we have specified, or as that time may be extended by the district court, shall be grounds for the district court to enjoin further proceedings on Luloff's eminent domain application. The costs on this appeal are taxed three-fourths to appellant and one-fourth to appellee.

**AFFIRMED ON CONDITION AND REMANDED.**

6. If Luloff chooses to provide evidence of a permanent easement of record, that need not be an instrument that antedates this opinion.