# IN THE SUPREME COURT OF IOWA

No. 08–1009

Filed January 8, 2010

**EDWARD A. GREEN, MELVIN J. GREEN**
and **BARBARA GREEN,**

    Appellants,

vs.

**WILDERNESS RIDGE, L.L.C., LORAS J. FABER,
SANDRA FABER, JOHN H. KIVLAHAN, DORIS E.
KIVLAHAN** and **DUBUQUE COUNTY, IOWA,**

    Appellees.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Dubuque County, Lawrence H. Fautsch, Judge.

Plaintiffs seek further review in private condemnation action asserting that the district court ignored the costs of condemnation in determining the "nearest feasible route." **DECISION OF THE COURT OF APPEALS VACATED, DISTRICT COURT JUDGMENT AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED.**

Stephen W. Scott of Kintzinger Law Firm, P.L.C., Dubuque, for appellants.

Brian J. Kane of Kane, Norby & Reddick, P.C., Dubuque, for appellees.

**APPEL, Justice.**

This case presents the court with a little utilized area of the law—private condemnation. The plaintiffs seek further review of a district court order granting the defendant's action for private condemnation and selecting the defendant's proposed route of condemnation. While not disputing the need for private condemnation, the plaintiffs challenge the selection of the route, asserting that the district court's determination of the "nearest feasible route" was in error as it: (1) concluded that Dudley Lane was not an existing public road and (2) ignored the costs of acquiring the land sought to be condemned. On further review, we vacate the decision of the court of appeals, affirm in part and reverse in part the district court judgment, and remand the case for further proceedings.

### I. Factual and Procedural History.

In July 2006, Wilderness Ridge, L.L.C. purchased real estate in rural Dubuque County for recreational and hunting purposes. At the time of purchase, the defendant was aware that the seventy-five acre tract of land was landlocked and inaccessible by public road or private access. The previous owner attempted to secure access through private condemnation prior to selling the property, but was unsuccessful. Once the land was acquired, Wilderness Ridge instituted a new private condemnation proceeding under Iowa Code section 6A.4(2) (2005) to secure access to its property through neighboring tracts, including land owned by the plaintiffs, Edward, Melvin, and Barbara Green.

The Greens subsequently filed a petition in equity arguing that the route proposed by Wilderness Ridge was not the "nearest feasible route" to an existing road as required by statute. Specifically, the Greens asserted that Wilderness Ridge's proposed route, known as the southern

route, would have a devastating impact on their dairy farm. They argued that the southern route, which would bisect the farm, would decrease the value of their property and inhibit their day-to-day farming operation because moving the cattle would be more onerous and half of their land would now be cut off from electricity and water. Nevertheless, the Greens did not challenge Wilderness Ridge's need for private condemnation. Instead, the Greens proposed an alternative route, the northern route, which would traverse the northern-most portion of their property.

The matter proceeded to trial before the district court. The Greens called numerous witnesses, including Dennis Meyer, a farmer and real estate broker, who testified that the southern route would devalue the Green farm by $1200 an acre. Cornelius Donovan, a farm auctioneer, estimated a $1500 loss per acre or a total devaluation of $180,000. Additionally, the Greens called Rich Gansen, an excavation contractor, who opined that construction of the northern route would also be less expensive than the southern route as the southern route contained a "swampy area" that would require the construction of at least one culvert. Finally, the Greens asserted that the northern route would be shorter than the southern route because after 2630 feet the northern route would connect to Dudley Lane, a dedicated public road, while the southern route would not connect to a public road for 4135 feet.

Wilderness Ridge, conversely, presented evidence relating to the feasibility of the southern route. Michael Felderman, Dubuque County Engineer, testified that although Dudley Lane was classified as a level "B" county road it had not been maintained for several decades and no longer physically existed. As such, the defendant asserted that Dudley Lane did not qualify as a public roadway, making the northern route

4555 feet in length, 420 feet longer than the southern route. Kenneth Buesing, a registered engineer and land surveyor, also testified that construction of the southern route would be more feasible as the land was generally flat and a road could be constructed with a minimum amount of damage to the surrounding agricultural land. The northern route, alternatively, was unacceptable due to the "substantial elevation changes" and dense timber coverage.

The district court agreed with Wilderness Ridge. First, the district court concluded that Dudley Lane was not an "existing public roadway" and thus could not be considered in selecting the route of condemnation. Second, the court determined that the impact of condemnation, including the devaluation of the Green farm, could not be considered in selecting the route of condemnation. These costs were to be determined at a later hearing on damages. Relying heavily on Buesing's testimony, the court finally determined that the southern route would be the most feasible to build and thus constituted the "nearest feasible route" for condemnation purposes.

The Greens appealed and we transferred the case to the court of appeals. A divided panel of the court of appeals affirmed the district court judgment, concluding that Dudley Lane was not an existing public roadway and that the costs of condemnation could not be considered in selecting the "nearest feasible route." Plaintiffs sought further review. In taking further review, this court "may in its discretion limit its opinion to selected issues or may address all issues presented on appeal." *Botsko v. Davenport Civil Rights Comm'n*, 774 N.W.2d 841, 844 (Iowa 2009).

## II. Standard of Review.

When an action is tried in equity, this court's review is de novo. Iowa R. App. P. 6.907. Nevertheless, this court gives weight to the

factual findings of the district court, especially when considering the credibility of witnesses. *Owens v. Brownlie,* 610 N.W.2d 860, 865 (Iowa 2000).

### III. Discussion.

**A. Statutory Requirements of Condemnation.** Although eminent domain, the power to seize private property, is typically exercised by governmental bodies, the legislature has conferred a narrow power of eminent domain upon private citizens in Iowa. That power is codified in Iowa Code section 6A.4(2). While that section outlines the limited availability of private condemnation, it also provides guidance for courts in determining the appropriate route to be condemned. Section 6A.4(2) provides:

> The condemned public way shall be located on a division, subdivision or *"forty"* line, or immediately adjacent thereto, and along the line which is the *nearest feasible route* to an *existing public road,* or along a route established for a period of ten years or more by an easement of record or by use and travel to and from the property by the owner and the general public.

Iowa Code § 6A.4(2) (second and third emphasis added). In determining the appropriate route of condemnation in this case, we must determine (1) what constitutes an existing public road and (2) whether the costs of acquiring the condemned property can be considered in determining the nearest feasible route.

**B. Status of Dudley Lane.** Though not dispositive, the status of Dudley Lane is a factor to be considered in selecting the route of condemnation. If Dudley Lane is considered an "existing public road," then the northern route would only be 2630 feet long. If, however, Dudley Lane is not considered an "existing public road," the northern route would have to traverse 4555 feet to connect the Wilderness Ridge

property to the next public road. At 4555 feet, the northern route would be 420 feet longer than the southern route.[1]

Iowa's eminent domain statute requires that a route of condemnation connect landlocked property "to an existing public road." Iowa Code § 6A.4(2). Numerous witnesses, including experts and neighboring property owners, testified that no trace of Dudley Lane currently exists. While the Greens offered evidence that Dudley Lane is still classified in records as a level "B" road and that the road's theoretical location could be determined based upon old plats, Dudley Lane does not physically exist. Dudley Lane thus exists as a road only on paper and not in reality. As a result, we conclude that Dudley Lane is not an "existing public road" under Iowa Code section 6A.4(2).

Requiring the existence of an actual physical roadway comports with legislative intent. The purpose of section 6A.4(2) is to provide landlocked property owners access to their property. Access which would require Wilderness Ridge to engage Dubuque County in litigation to compel the county to maintain Dudley Lane as a level "B" road would not provide the defendant reasonable access to the property for the foreseeable future, even if the outcome of such litigation was certain. *See In re Luloff*, 512 N.W.2d 267, 271 (Iowa 1994) (rejecting claim that an owner of landlocked property must pursue one or more legal actions in order to determine whether he/she has access to the property prior to initiating an action for private condemnation); *Bellon v. Monroe County*, 577 N.W.2d 877, 879 (Iowa Ct. App. 1998) (rejecting mandamus action to force county to maintain level "B" road at level "A" standards).

---

[1]The mere fact that the northern route, without the use of Dudley Lane, is slightly longer than the southern route is not dispositive on the issue of "nearest feasible route." *Cf. In re Luloff*, 512 N.W.2d 267, 272 (Iowa 1994). Length of the available routes is, however, a factor to be considered in selecting the "nearest feasible route."

**C.** **"Nearest Feasible Route."** Although section 6A.4(2) prescribes "nearest feasible route" as the standard for selecting the route of condemnation, it does not define feasible nor describe what factors should be taken into consideration when determining feasibility. This court has also not had the opportunity to determine the meaning of "nearest feasible route."

In the absence of a statutory definition, the parties have offered competing definitions. The Greens urge us to adopt a flexible approach where there is no rigid formula for establishing the "nearest feasible route." Under their theory, a factor for the court to consider in selecting the route of condemnation is the cost of acquiring the condemned property. Wilderness Ridge, conversely, advocates for a narrow definition and asserts that the word "feasible" as used in section 6A.4(2) solely encompasses whether a particular route can be made into a usable access—i.e., whether a road can be built across the route. Allowing the district court to consider the costs of condemnation, moreover, under the defendant's theory, would usurp the authority of the compensation commission which has jurisdiction over condemnation damages.

We agree with the Greens. "In the absence of a legislative definition of a term or a particular meaning in the law, we give words their ordinary meaning." *State v. Kidd*, 562 N.W.2d 764, 765 (Iowa 1997). Dictionaries are ready sources for ascertaining the common and ordinary definitions of a word. *Id.* Feasible has been defined as "capable of being done, executed, or effected: possible of realization," "capable of being managed, utilized, or dealt with successfully," and "reasonable." *Webster's Third New International Dictionary* 831 (2002). At the core of the definition of "feasible," therefore, are the notions of reasonableness

and practicality. A determination of which route is the most reasonable to all parties involved, moreover, must be made on a case-by-case basis.

We note that unlike other state eminent domain statutes, section 6A.4(2) does not provide a laundry list of criterion for selecting the route of condemnation. *See, e.g., In re Private Rd. v. Bobst Mountain Hunting Club*, 684 A.2d 237, 241 (Pa. Commw. Ct. 1996) (noting the four statutory criteria for selecting the location of a private road, including the route which would do the least injury to private property). The failure of the Iowa legislature to establish specific criteria for determining the "nearest feasible route" suggests the need for an individualized determination that extends beyond a mere determination of which route is easiest to construct without consideration of land acquisition costs. In this instance, determining the "nearest feasible route" of condemnation requires consideration of which route is easier to construct *and* which route will do less harm to the neighboring properties.

Although we have found no private condemnation statutes in other states using the phrase "nearest feasible route," other jurisdictions have followed a flexible approach and considered the impact of condemnation in selecting the appropriate route. *See, e.g.*, Tenn. Code § 54-14-101(*a*)(1) (2008) (noting that route should do the least possible injury); *Brothers v. Holloway*, 692 So. 2d 845, 848 (Ala. Civ. App. 1997) (noting that the condemnees' convenience was a material factor for the court to consider); *Bean v. Nelson*, 817 S.W.2d 415, 418 (Ark. 1991) (noting that in selecting the location of a private road, the court must take into consideration not only the convenience and benefit to the limited number of people it serves, but the injury and inconvenience it will occasion the defendant); *West v. Hinksmon*, 857 P.2d 483, 487 (Colo. Ct. App. 1992) (noting that in an action for private condemnation, the condemnee

should be permitted to show that an acceptable alternative route across condemnee's property exists which would be less damaging than that proposed by the condemnor).

Ignoring the cost of acquiring the condemned property, moreover, would lead to absurdities. The shortest route of access to landlocked property might be through highly-improved land. We think it is unlikely that the legislature intended to mandate that the land to be condemned must always be the shortest route, even though other somewhat longer routes involved less negative impacts on other landholders and less overall cost to develop when land acquisition costs are considered.

Nor do we believe that in allowing the district court to consider the costs of acquisition we are usurping the statutory function of the compensation commission. Under Iowa Code section 6B.4, after an action for private condemnation has been granted, a compensation commission is established "to assess the damages to all property to be taken." Allowing the district court to consider the impact of condemnation does not usurp the commission's jurisdiction because: (1) it requires only an approximation, and not a determination, of the damages of condemnation and (2) does not require or allow the district court to issue a judgment on those damages. Moreover, the compensation commission has no authority to challenge the route of condemnation. Reserving the Greens' challenge to the damages proceedings, therefore, does not vindicate their rights.

Finally, this approach is consistent with our prior case law. In *Owens*, this court considered the criteria for determining whether a property owner had reasonable access to his land or, in other words, whether the owner had a right to private condemnation. *Owens*, 610 N.W.2d at 867–68. In reaching that question we suggested that in some "cases it may be appropriate to also consider the value of the land sought

to be condemned." *Id.* at 868. If the value of the land sought to be condemned is an appropriate factor to consider in evaluating the right to condemnation, the value of the land sought to be condemned is an appropriate factor to consider in determining the specific route of condemnation. Upon our de novo review, we hold that the district court erred in not considering the costs of condemnation in selecting the "nearest feasible route."

While both parties seek finality and urge this court to determine the "nearest feasible route," we are unable to do so under the record presented. At trial, the Greens presented substantial testimony regarding the cost of acquisition in the selection of the southern route. The record also contains anecdotal evidence in regard to the costs of acquisition for the northern route, which impacts property owners other than the Greens. The district court, however, did not make findings of fact regarding the cost of acquisition of either route. Such findings of fact could involve credibility determinations which should be made in the first instance by the district court. As a result, this case is remanded to the district court for additional factfinding and a determination of the "nearest feasible route," which takes into consideration the cost of acquiring the condemned property, under the current record.

**IV. Conclusion.**

On further review, we conclude that the costs of acquiring the condemned property should be considered in selecting the "nearest feasible route." The decision of the court of appeals is vacated, the district court judgment is affirmed in part and reversed in part, and the case remanded for further proceedings.

**DECISION OF THE COURT OF APPEALS VACATED, DISTRICT COURT JUDGMENT AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED.**