# IN THE COURT OF APPEALS OF IOWA

No. 15-0044
Filed April 27, 2016

MIDDLE RIVER FARMS, LLC,
    Plaintiff-Appellee,

vs.

LADONNA ANTRIM and
TERESA ANTRIM,
    Defendants-Appellants.
_____

    Appeal from the Iowa District Court for Adair County, Jeffrey D. Farrell,

Judge.


    Landlocked property owners appeal from an order selecting route in

declaratory judgment action related to private condemnation proceeding.

**AFFIRMED.**



    Laura N. Martino of Grefe & Sidney, P.L.C., Des Moines, for appellants.

    Matthew J. Hemphill of Bergkamp, Hemphill & McClure, P.C., Adel, for

appellee.



    Heard by Danilson, C.J., and Mullins and McDonald, JJ.

**MCDONALD, Judge.**

Ladonna and Teresa Antrim filed a private condemnation action against an adjoining property owner, Middle River Farms, to obtain access to a landlocked parcel of property. In response, Middle River Farms filed this declaratory judgment action, seeking declaratory and injunctive relief. The parties agreed the district court should select the condemnation route pursuant to the statutory criteria set forth in Iowa Code section 6A.4 (2013). The district court selected Middle River Farms' proposed condemnation route rather than the Antrims' proposed condemnation route. The Antrims timely filed this appeal.

I.

For the purposes of grounding the discussion, the exhibits below identify the parcels at issue and the proposed condemnation routes.





The top image shows section 18, Harrison Township, Adair County, Iowa. The Antrims purchased the southernmost forty acres at issue in 1953. The forty-acre parcel is split by the Middle River. The majority of the property is north of the Middle River; however, there is a southern portion rendered inaccessible from the northern portion because of the Middle River. *See Owens v. Brownlie*, 610 N.W.2d 860, 867-69 (Iowa 2000) (concluding "natural obstruction over private land makes a portion of the land inaccessible for the purposes of condemnation"). The bottom image shows the inaccessible property in more detail and the parties' proposed routes.

Until 2012, the property across which the Antrims traveled to reach the inaccessible property was owned by the Childress family. The Childresses allowed the Antrims to access the inaccessible portion of the Antrims' property by following a route along the tree line at the north side of the field (marked as Alternate 3). Jack Childress left a grassy strip approximately ten to twelve feet

wide along the tree line for the Antrims to access their land south of the Middle River.

Prior to 2000, the Antrims raised cattle on the landlocked parcel. Since 2000, the Antrims leased the parcel to various people, most recently Glen Jones, who kept cattle on the land until about 2006 or 2007. The Antrims also rented the inaccessible portion to two different people for recreational hunting. Teresa Antrim told the renters to access the property the same way the Antrims had, along the tree line at the north side of the Childresses' property (alternate 3).

Members of the Sackett family leased and farmed the Childress property for many years. Sometime in the early aughts, Richard and Dan Sackett, father and son, formed Middle River Farms, L.L.C. Middle River Farms leased and farmed the Childress land until 2012, when they purchased it from the Childresses. Of the 120 acres owned by Middle River Farms, approximately 76 acres are tillable; the rest is pasture or timber. Middle River Farms plants row crop to the tree line on the north side of the property without leaving a grassy strip along the tree line for access to the Antrims' parcel. The evidence showed they had been doing this since 2000. When the Antrims asked for access along the route previously used, Richard Sackett said, "Nope, I planted clear to the edge."

In August 2012 the Antrims decided to sell the landlocked parcel. They first offered it to the Sacketts but received no response. In 2013, the Antrims sold the property to a third party for $88,000, contingent upon demonstrating

access to the property by easement. When the Antrims could not obtain an easement from the Sacketts, the contingent sale fell through.

After the failure of the sale, the Antrims filed a private condemnation action pursuant to Iowa Code chapter 6A.4. Middle River Farms responded by filing this action for declaratory judgment. The parties agreed the district court should select the condemned public way. The parties proposed three access routes, as identified in the above exhibit. The Antrims favored route three, the route they had used historically. Middle River Farms favored route one because it provided direct access to the inaccessible property without the loss of crop ground. At trial, the Antrims conceded route two was not feasible because it would run through the middle of Middle River Farms' row crop field. The district court determined route one was the most feasible route.

## II.

The parties disagree on the standard of review. The Antrims assert review is de novo. Middle River Farms asserts review is for the correction of legal error. Generally, the standard of review in a declaratory judgment action is determined by the manner of trial in the district court. *See City of Riverdale v. Diercks*, 806 N.W.2d 643, 651 (Iowa 2011). The mere fact the petition was filed in equity does not control. *See Passehl Estate v. Passehl*, 712 N.W.2d 408, 413 (Iowa 2006). "[W]e consider the pleadings, relief sought, and nature of the case [to] determine whether a declaratory judgment action is legal or equitable." *Id.* at 414. The only issue presented at trial in this matter was selection of the condemnation route according to statutory criteria, a legal issue. The district

court ruled on objections, normally a "litmus test" or "hallmark" for determining if an action is tried at law.[1] *See id.* at 414 n.6; *see also Sloun v. Agans Bros. Inc.*, 778 N.W.2d 174, 178 (Iowa 2010). The district court's decision being appealed is entitled "Findings of Fact, Conclusions of Law, and Judgment" instead of "decree." *See Sutton v. Iowa Trenchless, L.C.*, 808 N.W.2d 744, 748 (Iowa Ct. App. 2011). It is important to note the case before us is not an appeal from a private condemnation proceeding; instead, this is an appeal from a declaratory judgment action filed in response to a private condemnation proceeding. Given the foregoing, we conclude the case was tried at law and our review is for the correction of legal error. *See* Iowa R. App. P. 6.907; *City of Riverdale*, 806 N.W.2d at 652. The district court's findings are binding on us if supported by substantial evidence. *See* Iowa R. App. P. 6.904(3)(a). Even though we review this case for the correction of legal error based on the manner of trial, we would reach the same result on de novo review.

III.

"Although eminent domain, the power to seize private property, is typically exercised by governmental bodies, the legislature has conferred a narrow power of eminent domain upon private citizens in Iowa. That power is codified in Iowa Code section 6A.4(2)." *Green v. Wilderness Ridge, L.L.C.*, 777 N.W.2d 699, 702 (Iowa 2010). Iowa Code section 6A.4(2) provides, in relevant part:

> The condemned public way shall be located on a division, subdivision or "forty" line, or immediately adjacent thereto, and along the line which is the

---

[1] This factor is less significant when "the objections were minor and did not have a significant effect on the proceedings." *Passehl*, 712 N.W.2d at 414; *see Horsfield Materials, Inc. v. City of Dyersville*, 834 N.W.2d 444, 452 (Iowa 2013).

nearest feasible route to an existing public road, or along a route established for a period of ten years or more by an easement of record or by use and travel to and from the property by the owner and the general public.

To meet the statutory criteria, the proposed route must be "(1) located adjacent to a division, subdivision, or forty line and be the nearest feasible route to an existing public road; or (2) along a route established for ten years or more by (a) an easement or (b) use and travel by the owner of the property and the general public." *Finnegan v. Dickson*, No. 14-0143, 2015 WL 405979, at *4 (Iowa Ct. App. Jan. 28, 2015); *see In re Luloff*, 512 N.W.2d 267, 272 (Iowa 1994).

## A.

We first address the burden of proof. Middle River Farms sought declaratory and injunctive relief. "The burden of proof in a declaratory judgment action is the same as in an ordinary action at law or equity. The plaintiff bringing the action has the burden of proof, even if a negative declaration is sought." *Owens*, 610 N.W.2d at 866 (internal citations omitted). The supreme court has "previously determined that the burden of proof in an action to challenge the authority of the condemning entity to condemn land rests with the landowner whose land is sought to be condemned." *Id.* Therefore, the burden of proof rests on Middle River Farms.

## B.

The Antrims first contend route three should have been selected because it had been "established for a period of ten years or more . . . by use and travel to and from the property by the owner and the general public." Iowa Code § 6A.4(2)(b). The district court concluded there was "no evidence that the

general public used any route to travel to the landlocked property" and the statutory criteria were thus not satisfied. We conclude the district court's findings are supported by substantial evidence and its conclusions are not erroneous.

The statute does not define the term "general public." The Antrims cite *Phillips v. Watson*, 18 N.W. 659, 661 (Iowa 1884), in support of the assertion their renters were members of the public. *Phillips* related to the characterization of a route as "public" or "private" and not with the classification of the users of the route. 18 N.W. at 160-62. It is inapplicable here. In *Good v. Iowa Civil Rights Commission*, 368 N.W.2d 151, 155-56 (Iowa 1985), the court discussed the meaning of "general public" within the context of the Iowa Civil Rights Act. Its discussion is informative. In that case, the court concluded the term "general public" had an expansive meaning encompassing the entire public, as opposed to "the public," which could "mean any group or segment, however characterized, of the aggregate of the citizens of a political entity." *Good*, 368 N.W.2d at 156. In the context of this statute, we conclude the term "general public" should have a similarly expansive meaning. In this case, the record shows the only persons who used the route were owners and tenants of the landlocked property. This does not satisfy the "general public" requirement. *See Luloff*, 512 N.W.2d at 272 (holding testimony showing past use of access route by "hunters, mushroom hunters, and wood gatherers" was insufficient to establish use by the general public).

Furthermore, even if usage by the Antrims and their tenants satisfied the "general public" criterion, Middle River Farms established there has not been use

for ten years or more. The evidence showed Middle River Farms planted crop to the tree line for a number of years prior to this litigation without leaving an accessible route. The testimony showed the route had not been used in some time. While this may have been a route the Antrims used in the distant past, it is not a route used with any frequency in the last ten years. The district court's findings are supported by substantial evidence and without legal error.

C.

The Antrims next contend the district court erred in not selecting their proposed route three because it was "on a division, subdivision or 'forty' line, or immediately adjacent thereto, and along the line which is the nearest feasible route to an existing public road." Iowa Code § 6A.4(2)(b); *see Luloff*, 512 N.W.2d at 272 ("In the absence of a route previously used for ten or more years by the property owner and the general public, the requirement that the route proceed adjacent to a division, subdivision, or 'forty' line was triggered.").

The first statutory requirement is the route "shall be located on a division, subdivision or 'forty' line, or immediately adjacent thereto." Iowa Code § 6A.4(2)(b); *Luloff*, 512 N.W.2d at 272 (noting the court must first consider whether the route is along or adjacent to a "division, subdivision, or 'forty' line"). Chapter 6A does not define these terms. In chapter 354 on *Platting—Division and Subdivision of Land*, and chapter 355 on *Standards for Land Surveying*, "division" is defined as "dividing a tract or parcel of land into two parcels of land by conveyance or for tax purposes." Iowa Code §§ 354.2(6); 355.1(2). The term "subdivision" is defined as "a tract of land divided into three or more lots." *Id.* §§

354.2(17); 355.1(10); *see City of Cedar Rapids v. James Props., Inc.*, 701 N.W.2d 673, 676 (Iowa 2005). A "forty" line is the boundary of a forty-acre parcel of land, which is one-quarter of one-quarter of a section of land under the government survey system. *See Hanson v. Iowa State Commerce Comm'n*, 227 N.W.2d 157, 159 (Iowa 1975); *Finnegan*, 2015 WL 405979, at *4; *see also* Iowa Code § 354.2(7) (defining "Forty-acre aliquot part" as "one-quarter of one-quarter of a section"). In *Finnegan*, this court concluded "the legislature intended the terms, 'division, subdivision or forty line,' to mean where land has been divided, subdivided, or on the border of a forty-acre tract of land." 2015 WL 405979, at *6.

The selection of Middle River Farms' proposed route rather than the Antrims' proposed route was not erroneous because only Middle River Farms' proposed route follows or is immediately adjacent to a division, subdivision, or forty line. Route one runs closely parallel to the division line between the southeast quarter of the section, owned by Middle River Farms, and the southwest quarter of the section, owned by a member of the Sackett family, individually. The eastern half of route three runs roughly along what would be a division or forty line if the northeast quarter of the southeast quarter of the section were divided from the remaining land owned by Middle River Farms. However, the southeast quarter of the section is undivided (except for the northwest quarter of the southeast quarter, which is the inaccessible land at issue); therefore, route three does not run along any existing division, subdivision, or forty line. Route one is thus the only route that fits the statutory requirement. *See id.* (holding

"proposed access road approved by the district court, which is not on a division, subdivision, or forty line, is not permissible under section 6A.4(2)").

Even if both routes were along or immediately adjacent to a division, subdivision, or forty line, there is substantial evidence that alternative one is the nearest feasible route to a public road. The legislature has not defined "nearest feasible route," but our supreme court considered the issue in *Green,* 777 N.W.2d at 703-04. The court noted:

> Feasible has been defined as "capable of being done, executed, or effected: possible of realization," "capable of being managed, utilized, or dealt with successfully," and "reasonable." At the core of the definition of "feasible," therefore, are the notions of reasonableness and practicality. A determination of which route is the most reasonable to all parties involved, moreover, must be made on a case-by-case basis.
>
> We note that unlike other state eminent domain statutes, section 6A.4(2) does not provide a laundry list of criterion for selecting the route of condemnation. The failure of the Iowa legislature to establish specific criteria for determining the "nearest feasible route" suggests the need for an individualized determination that extends beyond a mere determination of which route is easiest to construct without consideration of land acquisition costs. In this instance, determining the "nearest feasible route" of condemnation requires consideration of which route is easier to construct and which route will do less harm to the neighboring properties.

*Id.* (emphasis in original) (internal citations omitted). Considering land acquisition costs does not usurp the function of the compensation commission established in section 6B.4 "to assess the damages to all property to be taken" once an action for private condemnation has been granted. *Id.* at 704.

With respect to the costs of construction, the preparation of route one is undoubtedly more expensive, but the costs are roughly comparable. Route one,

although shorter, is more difficult to construct because the grades on the route reach twenty-three to twenty-five percent. *See Green*, 777 N.W.2d at 703 n.1 ("Length of the available routes is . . . a factor to be considered in selecting the nearest feasible route."). Further, lower portions of the route would need culverts and fill to prevent water from washing out the route. In contrast, route three is fairly level. Both routes would need a layer of road rock to make them passable in all weather. One estimate for the cost of preparing route three was $12,000. The same expert estimated the cost of preparing route one at $40,000. Middle River Farms submitted an expert's estimate covering only the northern one-third of route one at $2540. The $2540 estimate encompassed only grading and installing culverts and did not include road rock. The district court noted the higher estimate was based on reducing the grade of route one to ten percent and was "likely high" because the grade did not need to be reduced that dramatically to make the road usable. The court found the actual cost would likely fall between the two estimates, or roughly $20,000. There is substantial evidence in support of this finding.

In addition to considering the costs of preparing the different routes, the district court also assessed the impact of the routes on Middle River Farms' property. *See id.* at 703-04 (stating the district court should assess damage to affected property). Route one does no damage to Middle River Farms' property because it takes no land out of production. In contrast, the evidence showed route three would result in a permanent loss of approximately 1.1 acres of crop land, or just under 1.5% of Middle River Farms' total tillable land. The district

court considered this a "permanent and significant impact" to Middle River Farms' use of its land. This finding is supported by substantial evidence. The district court's conclusion that the permanent impact to Middle River Farms, in terms of crop loss, was more significant than the one-time construction costs and made route one the "nearest feasible" route was not erroneous.

The Antrims contend route one cannot be a condemned public way because the statute requires the "nearest feasible route" to access an "existing public road." Relying on *Owens*, they argue Middle River Farms' route connects only to a class B road, which is not "reasonably adequate for the intended purpose." 610 N.W.2d at 868. In *Owens*, the court considered the question of whether a landowner may condemn an access route over land of another if it is possible to gain access through the landowner's own land. *Id.* at 867. In *Owens*, the "reasonably adequate for the intended purpose" standard was used to determine whether the landowner had access to the allegedly inaccessible property, i.e. whether the parcel was landlocked, and has no relevance to whether the proposed condemned route connects to an "existing public road." *Id.* at 868-69.

The issue is resolved by the plain language of the statute and controlling case law. The statute requires only that the access road connect to an "existing public road." Iowa Code § 6A.4(2)(b). Route one connects to and gives access to 190th Street, a class B road. A class B road is an existing public road. *See* Iowa Code § 309.57 (setting forth the A, B, and C classification of county roads). This conclusion is supported by *Green*. In that case, the court noted that a class

B road is a "public road" within the meaning of section 6A.4(2).  *See Green*, 777 N.W.2d at 703.  The *Green* court concluded, however, that the road was not an "existing public road" because the testimony showed the road "exist[ed] only on paper and not in reality."  777 N.W.2d at 703.  In other words, there was no actual road.  There is no such evidence here.

We conclude the district court did not err in selecting route three as the condemned public way.  Of the parties' proposed routes, it is the only route on or immediately adjacent to a statutorily-required line.  It is also the nearest feasible route to an existing public road.  The Antrims' proposed route would cause permanent economic loss to Middle River Farms.

IV.

We affirm the judgment of the district court.

**AFFIRMED.**

Mullins, J., concurs; Danilson, C.J., dissents.

**DANILSON, Chief Judge.** (dissenting).

I respectfully dissent. The standard of review applied by the Iowa Supreme Court in two cases with similar procedural postures, *Owens v. Brownlie*, 610 N.W.2d 860 (Iowa 2000), and *Green v. Wilderness Ridge, L.L.C.*, 777 N.W.2d 699 (Iowa 2010), was de novo review. Although I concede there are some factors existing in this action suggesting the review should be for correction for errors at law, at the heart of this action is an issue where equitable considerations determine its outcome. I also note the petition sought "such other and further relief as this Court may deem equitable and appropriate." Much like a contract action that is generally reviewed for errors at law, I believe issues relative to a private condemnation should generally be reviewed de novo. Accordingly, I disagree with the majority's determination of the standard of review to apply in this case.

Upon a de novo review, I would conclude Middle River has not met its burden of proof. I think the substantial grade and the substantial cost in development of the route proposed by Middle River, along with the route's access, which is limited to a class "B" road, result in Middle River's proposed route—route one—not being a feasible route, and it does not provide reasonable access. *Green*, 777 N.W.2d at 703-05 (concluding a level "B" road only existed on paper and not in reality and considering the cost of development of the route in determining "the nearest feasible route" as provided in Iowa Code section 6A.4(2)).