# IN THE COURT OF APPEALS OF IOWA

No. 16-1586
Filed October 11, 2017

**C&D MOUNT FARMS CORP.,**
    Plaintiff-Appellant,

**vs.**

**R&S FARMS, INC. and ROGER STOOKER,**
    Defendants-Appellees.
_____

Appeal from the Iowa District Court for Fremont County, Mark J. Eveloff, Judge.

A landowner appeals the district court's denial of his claims against the neighboring landowner's actions. **AFFIRMED.**

Mark A. Roberts and Dawn M. Gibson of Simmons Perrine Moyer Bergman P.L.C., Cedar Rapids, for appellant.

William Bracker of Law Office of Bill Bracker, Council Bluffs, for appellees.

Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**VOGEL, Presiding Judge.**

### I. Background Facts and Proceedings

The subject of this dispute is a berm separating two parcels of adjacent farm land. The plaintiff-appellant, Rick Mount, owner of C&D Mount Farms Corp., purchased his land in 2005 and claims the berm on the adjoining property causes water to pool on his land. Defendant-appellee, Roger Stooker, owner of R&S Farms, Inc., purchased his land in 1990 but has been farming the land since 1966. The berm sits on his land, which lies to the west of Mount's property.

Stooker and Mount are included in the same watershed that drains from southeast to northwest. Mount's land and the adjoining land to the east drain into what was referred to during trial as the "lateral" ditch across Mount's property. That water continues to drain west into a north-south ditch that runs between Mount's and Stooker's land, then the water continues north to the east-west "road ditch," which borders both properties on the north. Eventually, the water drains west into the Nishnabotna River.

A fence, a ditch, and the disputed berm divide Stooker's land from Mount's land to the east. In the late 1940s, previous landowners agreed to dig the ditch to solve drainage issues between the two properties. A north-south ditch was dug on the property line, with the "spoils" dumped onto the western (Stooker) property. The dirt was deposited into "pyramids" but was eventually smoothed out to form a berm. In the 1970s, when Stooker began to farm the property, the berm was covered with grass. Eventually, Stooker decided to farm on the berm, contributing to its decrease in height. Additionally, floods in 1993, 1998, 2007, and 2008 washed over the berm, reducing the height of the berm even more. In

2013, to make up for some of the soil loss, Stooker raised the berm a couple of feet. In 2014, Stooker obtained a permit from the Iowa Department of Natural Resources to further increase the height of the berm between his and Mount's property.

Mount sued Stooker, alleging Stooker, in "constructing" the berm, raised the elevations of Stooker's land causing excess water to flow onto or remain on Mount's parcel for a longer period of time. Mount raised nuisance, trespass, and breach of common law and statutory duty claims. Further, Mount asked the court to enjoin Stooker from current and future conduct elevating the height of the berm.

Following a two-day trial, the district court concluded Stooker did not create a nuisance or trespass on Mount's property because the level of flooding on Mount's land would be the same whether the berm existed or not. Moreover, the district court determined Stooker did not breach common law or statutory duties because of a long existing easement for the berm and because Mount had notice of the berm and altered water flow based on his history of farming the area and familiarity with the named parcels. Accordingly, the injunction was denied. The district court allowed Stooker to maintain the berm and build it to the height allowed by the permit.

Mount appeals.

## II. Standard of Review[1]

Our review of actions tried in equity is de novo. Iowa R. App. P. 6.907; *Green v. Wilderness Ridge, L.L.C.*, 777 N.W.2d 699, 702 (Iowa 2010). We, however, give weight to the factual findings of the district court, particularly when considering the credibility of witnesses. *Id.*

## III. Common Law and Statutory Duties

Mount contends the district court erred when it dismissed Mount's claim for breach of common law and statutory duties. Specifically, Mount asserts the district court improperly applied the law of estoppel and easement by prescription.

Generally, the owner of a dominant estate has a legal and natural easement to drain surface waters onto the servient estate. *Ditch v. Hess*, 212 N.W.2d 442, 448 (Iowa 1973). These principles controlling individual drainage rights have been codified in Iowa Code chapter 468 (2014).

> In determining which of adjacent tracts is dominant, relative elevation and not general movement of floodwaters is controlling. Water from a dominant estate must be allowed to flow in its natural course onto a servient estate. The flow may not be diverted by obstructions erected or caused by either estate holder. These corresponding rights and obligations do not mean that low parts on land must retain water in ponds until it percolates into the soil. A landowner may divert water by surface drainage constructed upon

---

[1] The district court generally adopted Stooker's proposed order. "We have recognized, however, where a district court adopts a prevailing counsel's proposed findings of fact and conclusions of law verbatim, we must scrutinize the record more carefully when conducting our appellate review." *NevadaCare, Inc. v. Dep't of Human Servs.*, 783 N.W.2d 459, 465 (Iowa 2010). Our supreme court has recognized the crucial role district courts play in making credibility determinations. *Rubes v. Mega Life & Health Ins. Co.*, 642 N.W.2d 263, 266 (Iowa 2002).

his or her own land even though some different or additional water may thereby enter the servient estate.

*Moody v. Van Wechel*, 402 N.W.2d 752, 757 (Iowa 1987).

Rights to original watercourses, however, may be waived by prescription. *Fennema v. Menninga*, 19 N.W.2d 689, 691 (Iowa 1945) (noting a ditch or barrier altering natural water flow will not be enjoined after it is maintained ten years with express or implied consent). Here, testimony established that the "spoils" from digging the ditch in the late 1940s were dumped onto what is now Stooker's property because Mount's predecessors in title refused to allow the dirt to pile on his land. The testimony shows the previous landowners agreed to the construction of the ditch for their mutual benefit, but the berm was created in the process. The ditch functioned well for many years, benefiting both land parcels.

Mount claims the district court erred in finding a prescriptive easement for the berm, or alternatively, that its use had been long abandoned. As such, he claims he was not on notice of its existence when he purchased the land in 2005. The district court determined Mount had notice of the berm, stating, "[Mount] has driven past the property repeatedly for decades as he farmed other property in the area." On cross examination, Mount admitted "there has been a berm there the whole time, . . . all along the little ditch that turns north," created when "dirt came out of the ditch and made a berm." But he later added that he simply never noticed it.

As to whether the prescriptive easement had been abandoned, Stooker testified that he would occasionally add dirt to low, eroded spots. Testimony from both Stooker's and Mount's experts established Mount's property will take on

water before Stooker's land during both flooding and heavy rains, and the land will then drain in the corner of Mount's property into the east-west road ditch. Thus, Mount will always receive water, regardless of whether Stooker receives water. Because the berm and ditch continued to function to keep Stooker's land relatively dry while simultaneously draining Mount's land, and because Mount acknowledged he knew of the berm's existence prior to his acquisition of the property, Mount failed to prove Stooker had abandoned the prescriptive easement.

Accordingly, the natural drainage of the two properties has been waived by prescriptive easement established decades ago, and Mount acquiesced to the structure's presence by purchasing the land, with some semblance of a visible berm, as well as having farmed the area for years with knowledge of the various ditches directing the flow of water. Thus, Mount failed to prove Stooker violated common law or statutory duties.

## IV. Nuisance and Trespass

Mount next asserts under trespass and nuisance theories the berm interferes with the natural drainage of surface water from his property onto Stooker's property. He asserts the berm repels water during heavy rain, as well as during flooding events from the Nishnabotna River. Mount asserts if Stooker is allowed to raise the berm as allowed by the DNR permit, it will adversely affect his farmland by backing water onto his property and damaging his crops. To support this contention, Mount testified he lost soybeans on approximately 4.2

acres in 2015, or approximately 115 bushels of soybeans, after rainfall backed up against Stooker's berm.[2]

Regarding nuisance and trespass, the district court stated:

> [Mount's] expert witness, . . . testified that during a flood event, the level of flooding on [Mount's] property would be the same whether the berm exists or not. He later testified it was possible there would have been the same amount of water on [Mount's] ground without the berm. [Mount] failed to prove that [Stooker's] berm created a nuisance and count 1 of the petition is dismissed.
>     Count 2 alleges Trespass. Essentially, Plaintiffs allege that the berm causes water to back up onto Plaintiff's property. Both the experts indicated that while the berm would help keep Defendant's property dry, it would not have any effect on the property owned by Plaintiff.

According to Mount, the district court mischaracterized his expert's testimony by paraphrasing the testimony and taking the testimony out of context. Mount contends the district court only contemplated a serious flooding event from the Nishnabotna River, and instead, it should have contemplated the effect of the berm during heavy rain when the ditch is clogged with debris such as cornstalks. Mount asserts his expert's testimony supports the conclusion that the berm substantially increases the number of his acres affected by water. Mount testified regarding the damages he sought to avoid should the court find for him under theories of trespass and nuisance and enjoin Stooker from raising the berm, stating:

> Well, the December '15 flood showed you what I'm up against. Where I didn't ever expect to have that much ground under water while he's dry. And then the other part that scares me is after he built the thing—the berm, he got a permit and he's going to go—if

---

[2] Mount testified the total amount of damages from the soybean loss was approximately $1150.00.

he wins today, he'll go higher. So I don't know how to extrapolate how many acres that'll be.

Iowa Code section 657.1(1) provides, in part:

Whatever is injurious to health, indecent, or unreasonably offensive to the senses, or an obstruction to the free use of property, so as essentially to interfere unreasonably with the comfortable enjoyment of life or property, is a nuisance, and a civil action by ordinary proceedings may be brought to enjoin and abate the nuisance and to recover damages sustained on account of the nuisance.

Section 657.2 lists nuisances including "[t]he corrupting or rendering unwholesome or impure the water of any river, stream, or pond, or unlawfully diverting the same from its natural course or state, to the injury or prejudice of others." Iowa Code § 657.2(4). The essence of a private nuisance is an interference with the use and enjoyment of land. *Guzman v. Des Moines Hotel Partners, Ltd.*, 489 N.W.2d 7, 10 (Iowa 1992).

Trespass ordinarily requires a showing of actual interference with a party's exclusive possession of land including some observable or physical invasion. *See Ryan v. City of Emmetsburg*, 4 N.W.2d 435, 438 (Iowa 1942).

It is clear the district court found Stooker's expert to be more credible. The district court concluded Mount's expert seemed to contradict himself. When asked about the effect of a flood with a newly constructed berm, Mount's expert testified:

Well, it would increase the area substantially that could be flooded. The—and the flood could occur from either upland storm water run-off or from river back-up. But as the water would rise, the berm would retain it so it would increase that area substantially. I don't know what two feet would do to it in acres but it would be substantial.

Then Mount's expert stated, "The December '15 water was river flood water back-up and in the absence of a berm the water would have been roughly the same elevation on both properties because it wasn't flowing." Both experts agree that during a flood, Mount's property will flood to the level of the river. The district court concluded a berm will keep Stooker's land dry but will not increase the area of Mount's land affected by floodwater. We agree. The evidence does not support a finding the floodwater backup is a nuisance to Mount or a trespass on his land.

Regarding heavy rain drainage, Stooker's expert indicated the current drainage culverts were adequate for draining water flowing from Mount's property to Stooker's, provided they were not blocked by cornstalks. In fact, Mount and his sons testified that prior to 2013 cornstalks drifting from their property and into the ditch did not back up and cause extensive flooding. While Mount asserts the construction of the berm caused the cornstalks to block the ditch, there is no proof the blockage was solely a product of the extended berm. The record establishes cornstalks drain from all over the watershed to Mount's property, Mount and his sons began using a new piece of farm equipment around 2013-2014, another property in the watershed drains into a roadside ditch without problems, a small ditch or borrow pit used to redirect water on Mount's property was removed or filled in, and the berm height was extended. The district court placed greater weight on Stooker's expert's testimony, which established drainage was adequate with appropriate maintenance. We agree with the district court's conclusion the berm itself does not present a nuisance to the Mount property or cause a trespass by backing rainwater onto Mount's land.

Accordingly, we affirm the district court denial of Mount's nuisance and trespass claims.

### V. Injunctive Relief

Mount finally contends the district court should not have denied his claim for injunctive relief. Mount contends Stooker should be enjoined from increasing the height of the berm. "A court of equity will not resort to the granting of injunctive relief unless it appears there is an invasion or threatened invasion of a right, and that substantial injury will result to the party whose rights are so invaded, or such injury is reasonably to be apprehended." *Sloan v. Wallbaum*, 447 N.W.2d 148, 149 (Iowa Ct. App. 1989). In *Sloan*, this court affirmed the issuance of an injunction where the servient estate holder blocked the exit of a drainage ditch. *Id.* Although the blockage in *Sloan* was only twelve inches high, the blockage could flood over five acres of land. *Id.* No damage had occurred in the three years prior to Sloan's action; however, when it rained, the dominant estate would inevitably be damaged. *Id.* at 149–50.

Here, there is no apparent invasion or threatened invasion of a right. The record establishes Mount knew his land drained into a ditch, not directly onto Stooker's property. Further, the record establishes Mount's property takes on water sooner than does Stooker's land during floods and Mount's property only floods to the level of the river. Therefore, whether a berm is present or not, Mount's property will always flood to the level of the river. Additionally, the record establishes Mount's property properly drained into the roadside ditch prior to 2013, when cornstalks accumulating on Mount's property plugged the drain. Nothing in the record establishes the berm affected the cornstalk drainage.

Accordingly, the district court found there was no nuisance or trespass upon Mount's property. Since no apparent invasion or threatened invasion of a right exists, the district court properly denied the injunction.

## VI. Conclusion

Because Mount failed to prove the existence of a nuisance or trespass on his land to succeed on his claim for injunctive relief, and because Mount failed to prove Stooker violated common law or statutory duties, we affirm the district court's dismissal of Mount's claims.

**AFFIRMED.**